*In re* LAST WILL OF HIRAM C. ROBINSON, deceased, ILLINOIS MASONIC ORPHANS' HOME .

*v.*

BETTY GRACY *et al.*

*Opinion filed April 18, 1901.*

1. WILLS—*what evidence competent to establish a will in circuit court.* On appeal to the circuit court from an order of the county court denying probate, the proponents may prove the execution of the will and the sanity of the testator by any legitimate evidence, and are not limited to the testimony of the subscribing witnesses; but those resisting probate, on appeal cannot introduce evidence as to the testator's sanity other than that of the subscribing witnesses.

2. SAME—*what questions are questions of fact to be determined from the evidence.* On appeal to the circuit court from an order of the county court denying probate, whether the instrument was signed in the presence of the attesting witnesses or acknowledged by the testator to be his act and deed, and whether he was at that time of sound mind and memory, are questions of fact to be determined from the evidence. (*Graybeal* v. *Gardner*, 146 Ill. 337, distinguished.)

3. SAME—*testator's acknowledgment of will need not be in words.* The acknowledgment of the testator may be indicated by his acts and conduct, and if the person who drew the will and superintended its execution speaks of it as the testator's will, and requests the witnesses, in the testator's presence, to sign it as his will, the testator's presence and silence, if he is then of sound mind and memory, give consent to such declarations, and amount to an acknowledgment by him of the will as his act and deed.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

WARVELLE & CLITHERO, and JAMES H. MARTIN, for plaintiff in error.

JOHN M. HERBERT, WILLIAM V. WHITSON, and SAWYER & EVANS, for defendants in error.

Per CURIAM: An opinion was filed in this case at a former term affirming the judgment of the court below, but upon petition of plaintiff in error for a rehearing the conclusion was reached that the record ought to receive further consideration.

This writ of error is from an order of the circuit court of Jackson county refusing the probate of the will of Hiram C. Robinson, deceased, the case having been brought to the circuit court by the beneficiaries from the county court of that county, which had also refused to admit the instrument to probate. The will appears upon its face to have been executed at Metropolis, Illinois, February 13, 1899, signed by Hiram C. Robinson, and witnessed in the following form:

"At his request we sign as witnesses, having no interest under said will. This the 13th day of February, 1899.

Witnesses: EVANGELINE GORDON,
L. E. GORDON."

The instrument is in three clauses, the first making small bequests to relatives of the testator. The second, bequeathing personal property necessary for his burial and the erection of a suitable monument to his grave. The third, giving, devising and bequeathing all the remainder of his estate, real and personal, to the plaintiff in error, "the Illinois Masonic Orphans' Home, now located at Chicago, Illinois, in trust for the benefit of the above named institution as a perpetual fund, the interest, rents and profits only to be annually applied to the use and benefit of above mentioned institution, the trustees

of said institution to keep the body or principal of the fund so invested as to be safe and profitable in bearing interest, rents and profits." The further provisions of the will direct his executor to turn over the property to this beneficiary, authorizing him to convert the property into cash in the manner to realize the greatest amount to the purpose mentioned; to sell bonds, make deeds, etc., and nominating George N. Albon, of DeSoto, Jackson county, as his executor, revoking all former wills, etc.

The grounds upon which it is claimed the probate and circuit courts were justified in refusing to admit the instrument to probate are, that it was not shown that the attesting witnesses were present and saw the testator sign the will in their presence, or that he acknowledged the same to be his act and deed, or that they believed him to be of sound mind and memory at the time of signing or acknowledging the same, nor did these facts sufficiently appear on the hearing in the circuit court from other testimony. The statute (Hurd's Stat. 1899, chap. 148, sec. 13,) provides: "When the probate of any will and testament shall have been refused by any county court, and an appeal shall have been taken from the order or decision of such court refusing to admit such will to probate, into the circuit court of the proper county, as provided by law, it shall be lawful for the party seeking probate of such will, to support the same, on hearing in such circuit court, by any evidence competent to establish a will in chancery; and in case probate of such will shall be allowed on such appeal, it shall be admitted to probate, liable, however, to be subsequently contested, as provided in the case of wills admitted to probate in the first instance." Under this statute it is well settled that on such appeal the party seeking probate of a will may prove its execution and the sanity of the testator by any legitimate evidence, and is not limited to the testimony of the witnesses thereto. (*Crowley* v. *Crowley,* 80 Ill. 469; *Thompson* v. *Owen,* 174 id.

229).   Also, those resisting its admission to probate on
such appeal cannot introduce evidence as to the testa-
tor's sanity other than that of the attesting witnesses.
*Heirs of Critz* v. *Pierce*, 106 Ill. 167.

In our former opinion we said: "Whether or not the
decedent, Hiram C. Robinson, was of sound mind and
memory at the time of making the alleged will, and
whether or not there was any sufficient witnessing and
acknowledgment thereof, were questions of fact for the
circuit court to determine, the parties having waived a
trial by jury." It is insisted in the petition for rehearing
and subsequent argument on behalf of the plaintiff in
error that this language is in conflict with what was said
in *Graybeal* v. *Gardner*, 146 Ill. 337, the language there be-
ing, "the question whether a will had been executed with
all the proper formalities is one of law, and not of fact
which a jury can consider,"—citing *Roe* v. *Taylor*, 45 Ill.
485.   When the questions which were before the court in
this case are properly considered there is no inconsist-
ency in the foregoing statement and the law announced
in the *Graybeal case*.   The controversy here is not whether,
upon its face, the instrument was *"executed with all the
proper formalities,"* but whether it was signed in the pres-
ence of the attesting witnesses or acknowledged by the
testator to be his act and deed, and whether he was at
that time of sound mind and memory,—and these were
questions of fact to be determined from the evidence.

The more serious question in the case is whether the
order of the circuit court on these questions was author-
ized by the evidence.   The evidence does show that the
witnesses were not present and did not see the testator
sign the instrument, but whether he acknowledged in
their presence that the same was his act and deed is
one of the controverted questions in the case.   Lawrence
E. Gordon, who is a dentist by profession, testified, after
identifying the will: "I signed said instrument as wit-
ness February 13, 1899.   I signed it as witness to the will

of Dr. Robinson.   George N. Albon, Mary Everett, my wife, Evangeline Gordon, and Dr. Robinson, were present when I appended my name.   It was about noon when I signed it as witness.   My wife and I were sent for to sign the will of Dr. Robinson.   *   *   *   I went into Dr. Robinson's room and asked him if I had been sent for to sign the will; that was the meaning of it.   George N. Albon said, 'Yes, sir.'   I don't remember any other conversation at that moment.   I next took up the will and started to turn it over to read it, and Mr. Albon objected, saying, 'It is not customary for witnesses to read the will,' and referred the matter to Dr. Robinson, and he said 'Yes.' Dr. Robinson was lying in bed at the time, propped up with pillows, half reclining and half sitting.   We signed the will and went home.   Myself and wife signed it. Evangeline is her name.   I took the word of my wife that I was sent for to sign the will, and I read the clause that 'this is my last will.'   Nothing more was said with respect to my signing it.   I asked the question, 'Is that the purpose?'   Mr. Albon said, 'Yes, sir,' the purpose to witness the will of Dr. Robinson.   I did not ask anybody specially the question; I asked the room.   Dr. Robinson was in the room.   I did not then look at Dr. Robinson, but put the question generally.   I put it to some one that had authority to answer.   After I received the answer, 'Yes, sir,' I sat down to the table and started to read the will.   Mr. Albon objected, and I read the attesting clause, but not aloud.   Nothing further was said by any one that I remember."   To the question, "The entire conversation was your question, which you put to the room in general when you came in; the answer of Mr. Albon; the interposition that you should not read the will; Dr. Robinson made reply, 'Yes;' that was all that was said?" he answered, "I think it was."

The other attesting witness, Evangeline Gordon, testified that she resided in Metropolis and is the wife of L. E. Gordon; that her name to the paper purporting to

be the will of Dr. Robinson is in her handwriting; that she is not positive as to the date, February 13, 1899, but that it was in that month of that year. She says: "I signed it as a witness to witness the will of Hiram C. Robinson. George N. Albon, Mary Everett, Dr. Robinson, Dr. Gordon and myself were present when I signed as witness to the will of Hiram C. Robinson. Maggie Everett came after me and requested me to bring my husband to witness it. After that we went in the room. My husband asked what he just told you, as near as I can tell. He said, 'I believe you want us as witnesses' to Dr. Robinson's will. I think that is the question he put to the house; just said as witnesses. I am not sure whether he said will or not. That was the understanding, as Miss Everett had said. My husband said, 'Have you any objection to us reading the will?' I believe Mr. Albon said, 'It is not to be known until afterward; isn't it true?' speaking to Dr. Robinson, and he said, 'Yes, sir,' or nodded his head. He meant that it wasn't. That's the way I understood it. I am not positive which is correct, —my version or my husband's,—who said the words used was 'it is not customary for witnesses to read the will.' Albon made a remark, but I could not put it into his exact words, but said in some words, 'It is not to be known.' Mr. Albon said the contents are not to be known until afterwards. I think what my husband has said about this transaction and what I have said is correct—either is correct. My husband and I signed the will, got up and went home. That was all that occurred there then."

The testimony of the other two persons present at the time, George N. Albon and Maggie Everett, on this branch of the case is substantially as follows: Albon, after testifying in detail as to his having written the will and the circumstances under which he did so, and that Dr. Robinson read it over and signed it, delivering it back to him, says: "I asked him who he would have witness this will, and he said, 'Dr. Gordon and his wife; I will

have Maggie step over and ask them to sign it.' He told her to go and have them come and sign it as witnesses. She went, and had not been gone over five minutes until they came. They said, 'How are you by this time, doctor?' Dr. Robinson replied, 'Feeling very comfortable,' and followed that by, 'I will have to trouble you once more; I want you to sign my will as witnesses,' and as he said it he motioned to where the paper was lying, and Dr. Gordon walked up and says, 'Any objection to my reading this over?' I looked at Dr. Robinson, and the doctor replied, 'The contents, doctor, are not to be known.' Then I said, 'You may read the attesting clause, Dr. Gordon.' After he had read it he laid the paper down and signed it, and Mrs. Gordon followed and signed it as witness. They then went out."

Maggie Everett testified that she had been the housekeeper and nurse of Dr. Robinson for several years and had known him for twenty-seven or twenty-eight years; that on the morning of the 13th of February, 1899, after the will was signed by Dr. Robinson, "Mr. Albon asked who would witness it. He said to 'go over to Gordon's and tell Mrs. Gordon that he would like for them to come and sign his will as witnesses.' I went. Mrs. Gordon said that they would come as soon as Dr. Gordon came to dinner. I went back. They came, and Dr. Gordon asked Dr. Robinson how he was feeling. He said, 'Very comfortable,' and said, 'I will have to bother you a little again; I want you to sign my will as witnesses,' and handed the will to Mr. Gordon." The witness was asked, "After the doctor had asked them to sign the will did Mr. Gordon say anything?" and she answered: "When Dr. Robinson asked him to sign the will Dr. Gordon picked the will up and asked if there was any objection to his reading it. Dr. Robinson replied, 'The contents are not to be known.' Mr. Albon pointed to the clause at the bottom. Mr. Gordon read this and signed the will, and Mrs. Gordon signed after he did. Mrs. Gordon

said she would have to hurry back to get dinner. They were there about ten minutes, I suppose. The paper here shown me, purporting to be the last will of Dr. Robinson, is the paper Mr. Albon prepared that day and is the one about which I have been testifying. It is in George N. Albon's handwriting. I saw him write. The signature to it is in the handwriting of Dr. H. C. Robinson. I saw him sign his name to the paper and I saw the witnesses sign their names to this paper. They were about nine feet from Dr. Robinson when they signed it. He was in bed. The will was on the stand-table. The table was at the doctor's (Robinson's) side. He could see it."

Each of these witnesses was cross-examined at considerable length, and counsel in their argument give somewhat conflicting opinions as to the effect of their testimony. We think, however, that the foregoing is, in effect, what they each swore to, and that no just criticism can be made upon the apparent frankness and candor of either of them. It is true this testimony is conflicting as to whether the testator expressly acknowledged the will to be his act and deed in the presence of the attesting witnesses, but such an acknowledgment in words is not essential to the validity of the will. "The statute does not require the acknowledgment to be in language. Any act which indicates the same thing with unmistakable certainty will answer as well." (*Allison* v. *Allison*, 46 Ill. 61.) "The acknowledgment of the testator need not necessarily be manifested by words, but may be indicated by his acts and his conduct. Here the person who drew the will and who superintended its execution spoke of it as the testator's will in the testator's presence, and requested the witnesses, in the testator's presence, to sign it as his will. The silence and presence of the testator gave consent to these declarations on the part of the person superintending the execution of the will, and amounted to an acknowledgment by the testator of the will as his act and deed." (*Harp* v. *Parr*, 168 Ill. 459, and

cases cited.)  The testimony of the attesting witnesses brings this case within the rule thus announced, unless it must be held that Dr. Robinson was at the time in a mental condition incapable of understanding the business in hand, and they—Gordon and his wife—think he was. Even their testimony tends to show that by his response to Albon whether the contents of the will should be then known he understood what was being said and done.  In addition to the testimony of Albon and Miss Everett, which is direct and positive as to the fact that he did comprehend and understand what was said and done, there is the testimony of Mrs. Jane Helms, and of her daughter, Emma Helms, who came into the room immediately upon the retirement of Mr. and Mrs. Gordon, to the effect that Dr. Robinson was at that time in a condition of mind to fully understand and comprehend his surroundings,—in other words, that he was at that time of sound mind and memory.  The whole evidence bearing upon this branch of the case we think establishes, with reasonable certainty, that by his words and conduct the testator did acknowledge, in the presence of the attesting witnesses, that the instrument was his will.  It is to be observed that the attestation clause which the witnesses signed says, "at his request we sign as witnesses," etc.

On the other branch of the case,—that is, whether he was at that time of sound mind and disposing memory,— the evidence introduced by the proponents of the will, which alone could be properly considered upon the appeal to the circuit court, certainly proves *prima facie* that he did possess testamentary capacity.  It is true that Mr. and Mrs. Gordon gave it as their opinion that he was at the time in a comatose condition and that he was incapable of comprehending and understanding the business in hand; but the evidence of Albon and Miss Everett to the contrary is equally positive, and their testimony is corroborated by that of Mrs. and Miss Helms, as we have seen; also, as to his mental condition generally,

these and other witnesses testify that he had sufficient mind and memory to make a will within the rule in this State defining testamentary capacity. As under section 13, *supra*, interested parties may contest the will in chancery after it is admitted to probate, we do not deem it proper at this time to enter upon a further discussion of the evidence on the question of sanity.

We cannot agree with counsel on either side in their criticism upon the testimony of the four persons present at the time of the attestation of the will. It is insisted, on the one hand, that the evidence of Mr. and Mrs. Gordon is contradictory, and therefore its credibility is impeached. In our opinion there is no such discrepancy in their statements as ought to weaken the evidence of either. While their language is not identical in describing what was said and done, we think Mrs. Gordon truly said "either is correct,"—that is, their language means the same. Nor do we agree that there is sufficient ground in the evidence for the severe denunciation made by counsel for defendants in error of the truthfulness and credibility of Albon and Miss Everett. It is perhaps true that Albon manifested some disposition to have the will sustained, resulting, no doubt, from a pride in having that which he did in superintending the execution of it sustained; but beyond this, none of the four witnesses are shown to have had any interest whatever in the result of the case or the slightest motive to misstate the facts as they understood them.

On the whole record, after a careful re-consideration of the evidence and the arguments of counsel, we are constrained to hold that the circuit court erred in the judgment entered. It will accordingly be reversed, and the cause will be remanded to that court with directions to enter an order admitting the will to probate.

*Reversed and remanded.*

Mr. Justice Magruder, dissenting.