(No. 15800.—Reversed and remanded.)

GEORGE A. THORNTON *et al.* Exrs., Plaintiffs in Error, *vs.*
SAUL HERNDON *et al.* Defendants in Error.

*Opinion filed December 16, 1924.*

1. WILLS—*what is not necessary to valid execution of will.* It
is not necessary to the valid execution of a will that the testator
sign it personally, that the witnesses see his signature, that he de-
clare it to be his will, or that the witnesses know it to be a will
or understand that they are witnessing a will.

2. SAME—*what sufficient to entitle a will to probate.* To entitle
a will to probate it is sufficient if it bears the testator's signature,
whether written by himself or by another at his direction, is at-
tested by two competent witnesses who testify that they saw the tes-
tator sign the instrument in their presence or heard him acknowl-
edge it as his act and deed, and that they believed he was at the
time of sound mind and memory.

3. SAME—*what is sufficient to show will was complete when at-
tested.* Where a will is complete when offered for probate and the
attesting witnesses testify that the testatrix produced the instrument
as her will and asked them to sign it but so folded it that neither
witness could see anything but the line for their signatures, there
is sufficient showing that the will was complete when it was exe-
cuted, notwithstanding one attesting witness testifies the testatrix
told her she had not finished it.

4. SAME—*attesting witnesses must testify that testator or tes-
tatrix was of sound mind and memory.* Under the statute the at-
testing witnesses must declare on oath that they believed the testa-
tor or testatrix was of sound mind and memory when the will was
executed or acknowledged, and such question ·must be asked the
witnesses in the proceeding for probate.

5. SAME—*when proponents should be permitted to produce ad-
ditional evidence in the circuit court.* Under the statute the pro-
ponents, on appeal to the circuit court, are not limited to the tes-
timony of the attesting witnesses, and where, after such testimony
is in, the contestants move that probate be denied, and the pro-
ponents, in response to such motion, offer to introduce additional
witnesses in support of the will, it is error to reject the offer of
additional evidence even though the proponents make no statement
of what they propose to prove.

WRIT OF ERROR to the Circuit Court of Cook county;
the Hon. THOMAS G. WINDES, Judge, presiding.

MORRIS, CASHIN & MORRIS, and ALBERT B. GEORGE, for plaintiffs in error.

RAYMOND C. LYON, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Mary F. Wells died on February 6, 1922, and an instrument bearing date January 9, 1922, was presented to the probate court of Cook county for probate as her will. Probate was denied, the executors named in the supposed will appealed to the circuit court, which after a hearing also denied probate, and the executors prosecute a writ of error from this court, the will purporting to devise real estate in fee.

In the preparation of the will a printed form was used, consisting of a sheet of paper folded in the middle so as to make four pages, with the fold at the top. At the top of the first page was printed a formal introduction, declaring the document to be the last will and testament of the maker, leaving appropriate blanks for the name and residence of the maker, followed by a paragraph directing the payment of debts and funeral expenses. Then followed the line: "Second—After the payment of such funeral expenses and debts, I give, devise and bequeath." In the form the rest of the first page was blank, as was the second page and more than half of the third page, and at the bottom of the third page was printed a paragraph providing for the nomination of executors, followed by the testimonium, with a line for the testator's signature, and below that an attesting clause reciting a full compliance with the requirements of the statute. The blanks in the will were all filled by a typewriter, and in the second paragraph, following the words "give, devise and bequeath," appeared in typewriting, in regular succession, ten separate paragraphs making disposition of the testatrix's estate, providing for the expenses of a minister from Jacksonville,

Florida, for coming to Chicago to take charge of her funeral, and directing the erection of a tombstone. The name of the testatrix in the attesting clause was written with a pen.

The attesting witnesses were Minerva J. Hawkins and Emma W. Wilson. The former testified that Mrs. Wells called her late on a Saturday night in January and she went to Mrs. Wells' home. Mrs. Wells told her that she wanted her to sign Mrs. Wells' will, and she did so. She saw no signature and no writing whatever on the paper when she signed the will. The paper was so folded that it was impossible for her to see anything. This was about eleven or half-past eleven o'clock of the Saturday night before Mrs. Wells first entered St. Luke's Hospital, and the paper shown Mrs. Hawkins at the trial was Mrs. Wells' will and bore Mrs. Hawkins' signature, which she signed at Mrs. Wells' request.

Emma W. Wilson testified that she signed her name to the paper at the request of Mrs. Wells at Mrs. Wells' home in Chicago. The signature of Mrs. Wells was not on the will. She didn't see it when she signed. Mrs. Wells called her up and wanted her to come out and sign her will, and she got there about five o'clock Sunday afternoon. Mrs. Wells presented this paper to her and she signed it. She did not see the signature of Mrs. Wells or of Mrs. Hawkins or anything on the paper when she signed it. When she went out Mrs. Wells said to her that she wanted her to sign this will, and she signed it. Mrs. Wells said to her that she had not finished it,—she would finish it that night. Mrs. Wilson said, "Mrs. Wells, you are awfully late; you don't know what will happen to you when you go to the hospital," and Mrs. Wells said, "No, I know I don't; I am going to finish this to-night if I have to sit up all night to do it." This was about five o'clock Sunday afternoon, before Mrs. Wells went to the hospital. She told Mrs. Wilson that Mrs. Hawkins had signed it Saturday night and said she was going to the hospital the

next day. Mrs. Wilson could not see anything on the paper she signed, because it was so folded that she could not see anything at all except the one line to put her name. Mrs. Wells laid it on a table for her to write on, and she didn't look at anything except the bottom part, which was folded. She had the paper in her possession long enough to sign it. Mrs. Wells then took it and Mrs. Wilson could not tell what she did with it.

The defendants in error insist that the will was not properly executed because the witnesses did not see the signature of Mary F. Wells on the document and did not see anything on it when they signed it. The probate of wills is governed by the statute, which requires all wills to be in writing and signed by the testator or by some person in his presence and by his direction and attested in the presence of the testator by two credible witnesses, whose declaration, on oath, before the county court that they were present and saw the testator sign the will in their presence or acknowledge it to be his act and deed, and that they believed the testator to be of sound mind and memory at the time of signing and acknowledging the same, shall be sufficient proof of the execution of the will. It is not necessary to the valid execution of a will that the testator sign it personally, that the witnesses see his signature, that he declare it to be his will, or that the witnesses know it to be a will or understand that they are witnessing a will. (*Flynn* v. *Flynn*, 283 Ill. 206; *Elston* v. *Montgomery*, 242 id. 348; *In re Will of Barry*, 219 id. 391; *Webster* v. *Yorty*, 194 id. 408; *Gould* v. *Theological Seminary*, 189 id. 282; *Hobart* v. *Hobart*, 154 id. 610.) When the instrument is produced, if it bears the signature of the testator, whether written by himself or by another at his direction, and is attested by two competent witnesses who testify that they saw the testator sign the instrument in their presence or heard him acknowledge it as his act and deed and that they believed the testator was at the time

of sound mind and memory, that is sufficient to entitle the will to probate.

It is argued by the defendants in error that the will was properly denied probate because at the time it was attested by the witnesses it was not completed, and attention is called to the testimony of the witness Mrs. Wilson that Mrs. Wells said to her, "I have not finished this; I will finish it to-night." Mrs. Wilson replied that Mrs. Wells was awfully late and did not know what would happen to her when she got to the hospital, and the testatrix said, "No, I know I don't; I am going to finish this to-night if I have to stay up all night to do it." It is therefore argued that the will had not been reduced to writing at the time the witnesses signed it. Each of the witnesses testified that the testatrix produced the paper and asked them to sign her will; that the paper was folded so that no writing was visible and each signed her name under those circumstances. When the writing was produced for probate it bore the signature of the testatrix and the will itself was complete. Under the statute and the authorities construing it which have been cited, this was sufficient proof to admit the will to record. The testatrix produced the instrument, said it was her will and asked the witnesses to sign it. This was an acknowledgment that it was her act and deed,—that the instrument as it then existed in the presence of the testatrix and the witnesses was her will. Whatever may have been her intention to add to or take from the document, the instrument which she thus acknowledged as her act and deed by her acknowledgment and the attestation of the witnesses became her will then and there. It was necessary that the whole will should be in the presence of the witnesses when they attested it, and there is no evidence that the instrument was not in the same condition when executed as when produced in the court for probate. The facts that Mrs. Wells called on the witnesses to attest her will, that she produced a paper and

told them that this was her will and asked them to sign it and they did so, but that she carefully cóncealed the contents of the document, exposing only the line on which the witnesses were to write their names, all indicate that the document was complete at the time it was attested. In the case of *Gould* v. *Theological Seminary, supra,* in considering the question of the probate of a will as to which the witnesses stated, as they do in this case, that they did not see on the instrument the signature of the testator, it was said: "Attached thereto is his genuine signature. He sought out Earling and Manchee and asked them to witness it, which they did. From these facts a presumption arises that it was signed by the testator when he caused it to be attested. It would be unreasonable to assume the testator asked the witnesses to attest the execution of an unsigned instrument." In the same case the following is quoted from *Dewey* v. *Dewey,* I Metc. 349: "The purpose of procuring the attestation of the witnesses was to give effect to the instrument as a valid will. It can hardly be supposed that the testator, who was by his own active agency procuring the authentication of the instrument by the requisite witnesses, would have omitted the first step necessary to its due execution, viz., the signature by himself." It would be still more unreasonable to suppose in the present case that the testatrix would begin the making of a will by procuring the signatures of the witnesses to the attesting clause before the will was written. There is nothing in the evidence tending to show that the instrument was not in the same condition when presented for probate as when executed and attested by the witnesses.

The defendants in error also argue that there are unnecessary and unreasonable blank spaces left in the will and that this circumstance opens the door for fraud, and for this reason the execution of the will was not in accordance with the law. There is no requirement of the statute in regard to the form in which the will shall be re-

duced to writing or the amount of space which shall be left between different paragraphs, whether necessary or unnecessary, or the leaving of blank spaces in the instrument. If safeguards are required in the manner of the execution of wills to provide against mutilation, forgery, alteration or substitution of parts, it is the province of the legislature to provide them. The right to make a will is governed entirely by statute, and when statutory requirements have been complied with the court has no power to prescribe others.

The defendants in error insist that the will was not entitled to probate because there was no compliance with the statutory requirement that the subscribing witnesses should declare on oath that they believed the testator to be of sound mind and memory at the time of the execution of the will. No question was asked the witnesses in regard to the soundness of mind of the testatrix and there is no evidence in the record in regard to it. A compliance with this requirement of the statute is essential to the admission of the will to probate. *Hill v. Kehr, 228* Ill. 204; *In re Estate of Kohley, 200* id. 189; *Crowley v. Crowley,* 80 id. 469.

At the beginning of the trial the attorney for the proponents stated that he had a witness whom he would like to put on first so as to let him get away. The defendants in error objected to the introduction of the witness on the ground that the proponents were limited to the attesting witnesses, and the court stated, "There is no doubt in my mind as to that," but added, "I will hear him because of the situation that is presented here by counsel; it will be considered as a reply in the case, the same as they call doctors or lawyers out of order." Thereupon the witness was examined and afterward the subscribing witnesses testified. At the conclusion of their testimony the proponents' attorney said, "Now, as I understand your honor's ruling, we are limited now to the production of these two

witnesses?"    The court replied, "Yes, the other side may
go on with their case," and the proponents excepted.   The
defendants in error then made a motion that the will be
denied probate, and after their attorney had stated the
reasons for his motion the proponents' attorney said that
he stopped because of the court's statement as to his rul-
ing in regard to the matter; that counsel's position was
that he need not stop now but was allowed to make addi-
tional proof to support the will, and that there might be
no question about the attitude he offered to call additional
witnesses and make additional proof.   The defendants in
error objected that the offer came too late; that the pro-
ponents had closed their case and had no right to re-open
it unless the defendants in error introduced evidence.   The
court said, "I will not allow any evidence now," and the
proponents excepted.   Thereupon the motion to deny the
admission of the will to probate was allowed on the evi-
dence presented.

Section 13 of the act in regard to wills authorizes the
party seeking probate of a will on appeal to the circuit
court to support the will by any evidence competent to
establish a will in chancery, and it was error for the court
to limit the plaintiffs in error to the testimony of the attest-
ing witnesses.   (*Masonic Orphans' Home* v. *Gracy*, 190 Ill.
95; *Thompson* v. *Owen*, 174 id. 229; *Webster* v. *Yorty*,
*supra;* *In re Estate of Kohley, supra;* *In re Will of Barry*,
*supra;* *Hill* v. *Kehr, supra*.)   The defendants in error in-
sist that the court properly refused the offer of additional
evidence because the plaintiffs in error made no statement
of what they proposed to prove.   The proponents, in re-
sponse to the motion to deny probate, offered to introduce
additional witnesses in support of the will.   The court an-
nounced that he would not hear any evidence in addition
to that of the subscribing witnesses.   The issues were as
to the execution of the will and the soundness of mind
of the testatrix, and in view of the court's statement that

evidence would not be received other than that of the subscribing witnesses, the offer to introduce other witnesses in support of the will was sufficiently specific. It was error to reject the plaintiffs in error's offer of additional evidence.

The judgment will be reversed and the cause remanded to the circuit court for further proceedings.

*Reversed and remanded.*