(No. 12328.—Reversed and remanded.)

M. T. QUIRK, Appellee, *vs.* ELIZABETH BURGESS PIERSON
*et al.* Appellants.

*Opinion filed February 20, 1919—Rehearing denied April 2, 1919.*

1. WILLS—*executor may appeal from order of the county court
denying probate.* Section 14 of the Wills act provides that appeals
may be taken from the order of the county court allowing or dis-
allowing any will to probate, to the circuit court of the same county
by any person interested in the will, and the person named as ex-
ecutor in a will has such an interest as will entitle him to appeal
from an order of the county court denying probate.

2. SAME—*section 14 of the Wills act only requires the appellant
to have an interest in will.* Section 14 of the Wills act only re-
quires that one appealing from an order of the county court admit-
ting or denying probate must have an interest in the will, and
decisions under statutes which require an interest in the estate are
not applicable.

3. SAME—*rules of descent and devise are statutory.* What dis-
position shall be made of property when the owner dies is a legis-
lative question, and all laws governing the descent and devise of
property are wholly statutory.

4. SAME—*conditions for due execution of will must be complied
with.* The General Assembly has fixed the conditions upon which
the owner of property may dispose of it different from the Statute
of Descent, and such conditions must be complied with.

5. SAME—*due execution of will must be proved by party alleg-
ing its existence.* The making and due execution of a will must
be proved by the party alleging the existence of the will.

6. SAME—*what constitutes attestation in presence of testator.*
To constitute attestation of a will in the presence of the testator,
the testator must be so situated, both as to the will and the wit-
nesses, that he may, if he chooses, without effort or change of his
position, see both during the act of attestation.

7. SAME—*what is not an attestation in presence of testator.* It
is not an attestation in the presence of the testator if the testator
cannot see the act but merely concludes from the surrounding cir-
cumstances and what he understands is going on that an attestation
is taking place.

8. SAME—*attestation may take place in adjoining room.* It is
immaterial whether the attestation of a will takes place in the room
where the testator is or in an adjoining room, but the testator must·

have opportunity of personal knowledge, by his own vision and in his actual position, that the witnesses are signing their names to the instrument which he has signed as his will, in accordance with his request.

9. SAME—*the court cannot sustain a will on equitable grounds.* Courts are not authorized to sustain instruments presented as wills on equitable grounds and cannot enter upon any inquiry as to supposed equities between heirs and legatees or devisees.

APPEAL from the Circuit Court of Coles county; the Hon. WALTER BREWER, Judge, presiding.

VAUSE, HUGHES & KIGER, and HERRICK & HERRICK, for appellants.

T. E. LYONS, EDWARD C. CRAIG, DONALD B. CRAIG, and JAMES W. CRAIG, JR., for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, M. T. Quirk, presented to the county court of Coles county his petition for the probate of an instrument alleged to be the will of Patrick Burgess, deceased, in which the petitioner was named as executor. On a hearing of the petition the county court denied probate and the petitioner appealed to the circuit court. The appellants, who are heirs-at-law of Patrick Burgess, moved the circuit court to dismiss the appeal on the ground that the statute gave the petitioner no right to appeal. The motion was denied and there was a hearing and the will was admitted to probate. From the order admitting the will to probate the heirs-at-law have appealed to this court.

Section 14 of the act in regard to wills provides that appeals may be taken from the order of the county court allowing or disallowing any will to probate to the circuit court of the same county by any person interested in such will. The person named as executor in a will has a direct financial interest in it. (*Jones* v. *Grieser*, 238 Ill. 183;

287 — 12

*Fearn* v. *Postlethwaite,* 240 id. 626; *Scott* v. *O'Connor-Couch,* 271 id. 395.) By statute the powers of an executor before probate of the will are limited to certain specific things, and unless a will is admitted to probate there can be no letters testamentary, but these facts do not affect the question whether the person named as executor is interested in the will and the probate of it. No devisee or legatee will receive anything unless the will is admitted to probate, and so far as that matter is concerned the executor stands in the same relation, but he also has some powers before the will is admitted to probate, and his acts in the exercise of such powers are validated by the subsequent grant of letters. Neither does the fact that commissions given by law are for services rendered prove that the executor has no interest in the will, since the same condition exists as to every right of employment in any business or service. Statutory provisions for an appeal are not the same in all jurisdictions, and a statute authorizing an appeal to one interested in the estate, which is the basis of some decisions relied upon, does not apply to a statute giving such right of appeal to one interested in the will. One named as executor has such an interest, and the court did not err in overruling the motion to dismiss. *King* v. *Westervelt,* 284 Ill. 401.

The controverted question of fact at the hearing was whether the will was executed and attested in conformity to the requirements of the statute, and this is what occurred: Patrick Burgess lived at Humbolt, in Coles county. On November 17, 1917, an automobile containing M. T. Quirk, Thos. T. Monahan, John H. Sullivan and a chauffeur came to the house from Arcola, in Douglas county. Nothing in relation to the preparation of a draft of a will appears in the evidence, but Quirk, Monahan and Sullivan came into the bed-room where Burgess was lying in bed and Quirk produced a draft of the will and said to Burgess they had come to fix up his will and the others were to witness it,

and Burgess replied that he was glad to see them. The draft of the will was incomplete, in not giving the names of three married sisters of Burgess nor the description of the lot on which the residence was located. Burgess could not give those particulars, and the names of the sisters were obtained from Anna Moore, a sister of Burgess who was present, and the description of the lot was obtained by telephoning another party, and the names and description were written in the will. There was a conflict in the evidence as to whether the will was read to Burgess, but there was testimony that it was read without the names and description, and after the names and description were written in, those parts were read to Burgess by Quirk. Wilbur Moore, son of Anna Moore, raised Burgess up in bed and gave him a cup of milk, and Quirk said that would be a good time to have him sign the will. It was placed before him and he signed it. He said nothing about the paper or that it was his will or about witnessing it, but Quirk took the paper and went into an adjoining room, where Monahan and Sullivan signed the attestation clause. The house faced west and Burgess was in a bed in the northwest corner of a bed-room, so that the bed was in the northwest corner of the house and he was lying with his head to the west. The living room was south of the bed-room, and there was a doorway about five feet wide in which there was a portiere parted in the center and hanging on each side. It is uncertain just how far the portiere extended from the casing on each side. There was a dresser in the southeast corner of the living room, extending from southwest to northeast, and the paper was laid on the dresser about the center. Monahan testified that he stood with his right side toward the dresser at the southwest corner and he could see Burgess from where he stood. Sullivan testified that he was at the southwest edge of the dresser and he saw Burgess' face and head, and Burgess could have seen him when he was signing the will and was

looking toward him. Their testimony would justify the belief that Burgess could see one standing at the southwest corner of the dresser, but there is no evidence in the record tending to prove that Burgess could see the will or the act of signing it. The evidence for the objectors was that the middle part of the dresser, where the instrument lay, could not be seen from where Burgess was lying. Anna Moore, who was given a legacy of $2000 and who would greatly be benefited by the probate of the will, testified against her own interest as to the location of the bed and the dresser, showing that the will could not be seen by Burgess, and the caretaker who waited on Burgess and was there on the day of the execution of the instrument testified that he wanted to get for himself tobacco which Burgess kept in the dresser and did not want Burgess to see him open the dresser and get it, and that on that day he was helping himself to the tobacco and looked around to see if Burgess could see him and he could not. There was no evidence that Burgess could see the will or the act of attestation, and without proof of such facts the will cannot be admitted to probate. Both parties had plats made of the two rooms, with the location of the bed and dresser. The plat made by the civil engineer for the heirs-at-law confirmed the testimony that Burgess could not see the act of attestation. On April 22, 1918, more than five months after the will was executed, Sullivan and a civil engineer visited the house, and Sullivan changed the position of the bed by drawing it from the north wall and changing the dresser so as to bring both nearer the line of vision. Sullivan then laid down on the bed and the engineer stood at the dresser, and then the engineer laid on the bed and Sullivan stood at the dresser, and both testified that they could see each other. Sullivan had testified in the county court when he was asked if he signed the will on a dresser, that possibly it was; that he never paid any attention to it and was not looking after the furniture particularly; that he could not

remember whether the instrument was signed on an ordinary center table or some other kind of a table and could not remember. The plat made under such conditions was clearly insufficient to affect or overcome the definite testimony of the attesting witnesses themselves, which was only that Burgess could see them when standing at the southwest corner of the dresser.

What disposition shall be made of property when the owner dies is a legislative question, and all laws governing the descent and devise of property are wholly statutory. (*Kochersperger* v. *Drake,* 167 Ill. 122.) The General Assembly by the act in regard to the descent of property has provided to whom it shall descend and be distributed in case the owner dies intestate, and by the act in regard to wills has empowered the owner to make a different disposition by an instrument in writing executed and attested as therein provided, and an owner cannot change the descent of his estate, under the statute, except by will so executed and attested. (*Rohn* v. *Rohn,* 204 Ill. 184.) The making and due execution of a will are to be proved by the party alleging the existence of the will, and one of the requirements is that the will shall be attested in the presence of the testator or testatrix by two or more credible witnesses. What constitutes attestation in the presence of a testator has frequently been explained, and a general statement of the rule is that the testator must be so situated, both as to the will and the witnesses, that he may, if he chooses, see both in the act of attestation. The plain meaning of the law is that both the will and witnesses must be in the presence of the testator, so that he may without any effort or change of his position see both and see the act of attestation. It is not an attestation in his presence if he cannot see the act but merely concludes from the surrounding circumstances and what he understands is going on that an attestation is taking place. It is immaterial whether the attestation is in the same room or an adjoining one, but

the essential thing is that the testator must have an opportunity of personal knowledge, by his own vision and in his actual position, that the witnesses are signing their names to the instrument which he has signed as his will, in accordance with his request. (*Witt* v. *Gardiner,* 158 Ill. 176; *Drury* v. *Connell,* 177 id. 43; *Calkins* v. *Calkins,* 216 id. 458; *Schofield* v. *Thomas,* 236 id. 417; *Dubach* v. *Jolly,* 279 id. 530.) · Courts are not authorized to dispense with any of the requirements of the statute nor sustain instruments presented as wills on equitable grounds and cannot enter upon any inquiry as to supposed equities between heirs and legatees or devisees. The General Assembly has fixed the conditions upon which the owner of property may dispose of it different from the Statute of Descent, and such conditions must be complied with.

The order of the circuit court is reversed and the cause is remanded to that court, with directions to dèny probate of the instrument.

*Reversed and remanded, with directions.*

---

(No. 11975.—Appellate Court reversed; circuit court affirmed.)
THE AYERS NATIONAL BANK OF JACKSONVILLE *et al.* Plaintiffs in Error, *vs.* WILLIAM BARBER *et al.* Defendants in Error.

*Opinion filed February 20, 1919—Rehearing denied April 2, 1919.*

1. DEBTOR AND CREDITOR—*when creditors are not entitled to equitable relief against wife to whom a debtor has made conveyances.* Creditors filing a bill in aid of executions against a judgment debtor who before judgment made conveyances to his wife with fraudulent intent, cannot obtain equitable relief against the wife where there is no evidence that she participated in the fraudulent intent or had any knowledge of the indebtedness, but the evidence is that she bought the property of her husband to collect the amount he owed her.

2. SAME—*husband may protect wife or relatives as creditors by conveyances.* A husband may deal with his wife in business matters and protect her or his relatives standing as creditors by conveyances in satisfaction of existing indebtedness.