(No. 20315.—

JOHN WALKER, Plaintiff in Error, *vs.* FRED WALKER, Defendant in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 6, 1931.*

DAY & BEILMAN, for plaintiff in error.

NELS H. OLSON, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Fred Walker, a son of Alice Ann Walker, deceased, filed in the probate court of Cook county a petition for the probate of a written instrument alleged to be the last will and testament of his mother and in which the petitioner was designated as the chief beneficiary and executor. On a hearing of the petition on July 14, 1927, the will was admitted to probate. John Walker, another son of the deceased, and two of his sisters, prosecuted an appeal to the circuit court of Cook county. The testimony of the three subscribing witnesses to the will was presented, and the court found the instrument to be the last will and testament of

Alice Ann Walker and an order was entered that the will be admitted to probate. An appeal was prosecuted by John Walker to this court and the cause was transferred to the Appellate Court for the First District, where the judgment of the circuit court was affirmed. A petition for writ of *certiorari* has been allowed by this court to review the judgment of the Appellate Court.

It is contended by plaintiff in error that the instrument was not signed or acknowledged in the presence of two credible witnesses and was not attested by two such witnesses in the presence of the testatrix, as provided by section 2 of the Wills act.

The record as presented discloses the following facts concerning the testatrix and the execution, acknowledgment and attestation of her alleged will: The instrument consisted of three typewritten pages and on the margin of each page the signature of the testatrix appears. The last page contains the further signature of the testatrix, and the instrument is dated March 27, 1926. Immediately following her signature is a formal attestation clause containing the language frequently used in such clauses. Subscribed to this clause are the names and addresses of Robert Whitelaw, Lucy M. Whitelaw and David H. Frost. These witnesses testified upon the hearing that they believed the testatrix at the time she executed the instrument was of sound mind and memory and that there was no fraud, duress or undue influence. On Saturday afternoon, March 27, 1926, Fred Walker, a son of the testatrix, talked with the Whitelaws at their residence in Park Ridge over the telephone and asked if they and Frost, a brother of Mrs. Whitelaw, would witness his mother's will. Whitelaw said they would do so, and Fred told him he would bring his mother to Whitelaw's home. One of the Whitelaws either telephoned Frost, who lived next door, or went to his home and spoke to him about it, and he agreed to act as a witness. Later in the afternoon Fred and his mother arrived at the Whitelaw residence in

a Hupmobile sedan. The son parked the car facing east and immediately in front of the Whitelaw residence, which faced south on this street. The testatrix remained seated in the rear seat of the automobile and on the side nearest the house. Her location was about thirty-five feet from the south windows of the Whitelaw living room. The Whitelaw bungalow is located on the north side of the street, which runs east and west in front of the house. On the front of the house was a porch about six or eight feet wide. It was roofed and was about four feet above the walk which led to the house. There were six or seven steps leading to the porch from the sidewalk but no steps from the porch to the inside of the house. There was a little railing about two feet high on the outside of the porch, which enclosed it. Three windows on the south side of the living room faced on this porch. Inside of the living room was a library table about two feet wide and about forty-five inches long, which stood lengthwise in front of two of the living room windows and about three inches from them. The son went into the house where Mr. and Mrs. Whitelaw and Frost were, produced the instrument and requested the three persons to sign it as witnesses. Whitelaw said he wanted to make sure it was the will and signature of the testatrix and he took the will and went out to the car in which the testatrix was sitting. The other parties remained in the house. They saw Whitelaw go to the car and hand the instrument to the testatrix but did not hear anything that was said. Whitelaw stated on the hearing that he asked the testatrix if it was her will and signature, and she said that it was. He then returned to the house with the will and told the other witnesses that he was satisfied it was her will and signature and it was all right for them to sign it as witnesses. The writing was placed upon the table in the living room and signed by the three subscribing witnesses. Whitelaw signed his name first, standing at the north side of the table. He could not say that the testatrix was look-

ing at the house when he signed, but when he looked out he saw her and it is his recollection she was looking at him but he could not say for sure. Mrs. Whitelaw signed second, and she stood at the side of the table, facing east. As she signed she looked out of the window and saw the testatrix and the testatrix was facing east, but Mrs. Whitelaw said she saw the testatrix's eyes looking at witness in the house. Frost signed last and was standing in the same position that Whitelaw was when the latter executed the instrument. Frost stated when he signed he looked out and saw the testatrix looking toward the house, but later stated that whether it was at the time he was signing or not he did not know, but he did know that she was looking at the window when he looked out. After the witnesses signed their names Fred took possession of the will. Mrs. Whitelaw walked out to the automobile, where the testatrix was, and inquired about her health. Shortly afterward Whitelaw, Frost and Fred came out of the house and walked toward the car. When about ten feet from the car Frost spoke to the testatrix, though he testified he was not acquainted with her, and went to his home. Fred had the folded instrument in his hand and handed it to the testatrix. The Whitelaws were standing by the side of the car, or near by, and Fred thanked them for signing the will. The testatrix nodded her head in assent and said she was glad it was done. This was the only reference made to the will by the testatrix in the presence of Mrs. Whitelaw and at that time Frost had gone to his home.

Section 2 of the Statute of Wills (Cahill's Stat. 1927, p. 2503,) provides that all wills shall be reduced to writing and signed by the testatrix, or by some person in her presence and by her direction, and attested in the presence of the testatrix by two or more credible witnesses, two of whom shall declare on oath before the county court of the proper county that they were present and saw the testatrix sign the will in their presence or acknowledge the same to

be her act and deed, and that they believed the testatrix to be of sound mind and memory at the time of signing or acknowledging the will. It is indispensable that the statutory requirements be complied with to make a valid will. (*Harris* v. *Etienne*, 315 Ill. 540.) It is not necessary that the attesting witnesses see the signature of the testatrix upon the face of the will, or that an acknowledgment of the signature be made to them by the testatrix, or that they know that the instrument is a will, but the statutory requirements are satisfied if the testatrix acknowledges the execution of the will. (*Thornton* v. *Herndon*, 314 Ill. 360; *In re will of Barry*, 219 id. 391; *Hoover* v. *Keller*, 339 id. 126.) In the instant case the instrument was signed before the three witnesses saw it, hence it was necessary for the testatrix to acknowledge execution thereof to at least two of the witnesses. Testatrix asked none of the witnesses to subscribe their names to the instrument but she did acknowledge to Whitelaw, one of the subscribing witnesses, before any of the three witnesses affixed their signatures, that the instrument was her will and that her signature thereon was genuine. Frost had no information relative to an acknowledgment by the testatrix except as told to him by Whitelaw. Mrs. Whitelaw received like information from her husband, and after signing as a witness she was present at the car when the son presented the folded instrument to his mother and thanked the Whitelaws for their services. The mother nodded assent and said she was glad it was done. This act on the part of the testatrix, who was somewhat lame but who so far as this record shows had no other physical or mental infirmity, cannot be construed as an acknowledgment of her execution of the will. She merely joined in the expression of her son in thanking the Whitelaws for their trouble or inconvenience. The statute does not permit or contemplate that witnesses are to be secured for a testatrix, that they shall subscribe their names to a writing which only one of the witnesses knows and states to be the will

of the testatrix, and thereafter have their action, as well as the instrument, approved or ratified by the testatrix.

The further question to be considered is whether the instrument was attested in the presence of the testatrix. She was about seventy-five years of age at the time here in question and remained seated in the rear seat of the sedan automobile which her son had parked in front of the Whitelaw residence. She sat facing east and was about thirty-five feet distant from the table situated in the living room and in front of the porch windows of the Whitelaw house and upon which table the alleged will was placed when the three witnesses signed their names thereto. Fred Walker, a son of testatrix, went into the Whitelaw house, where he produced the will and asked the three witnesses to sign it. One of them, Whitelaw, took the will and went out to the car where the testatrix was and asked her about the instrument and her signature. He returned into the living room of the house with the will and reported his interview with her before the witnesses signed their names. The will was thereafter given to the son, who remained in the room while the attesting witnesses subscribed their names. He folded up the instrument and delivered it to the testatrix. There is nothing in the record showing that she saw the will from the time it was in Whitelaw's possession at the car until given to her by her son Fred. Neither is there any proof that she ever saw the signatures of the subscribing witnesses after they were affixed. What constitutes attestation in the presence of a testator has frequently been explained, and a general statement of the rule is that the testator must be so situated, both as to the will and the witnesses, that he may, if he chooses, see both in the act of attestation. The plain meaning of the law is that both the will and witnesses must be in the presence of the testator, so that he may without any effort or change of his position see both and see the act of attestation. It is not an attestation in his presence if he cannot see the act but merely

concludes from the surrounding circumstances and what he understands is going on that an attestation is taking place. It is immaterial whether the attestation is in the same room or an adjoining one, but the essential thing is that the testator must have an opportunity of personal knowledge, by his own vision and in his actual position, that the witnesses are signing their names to the instrument which he has signed as his will in accordance with his request. (*Quirk* v. *Pierson,* 287 Ill. 176.) It is not enough for the testator to be able to judge from such act as he may see that the witnesses were signing his will. It is essential to the attestation which the law requires that the testator have the opportunity of seeing the very act of attestation, the will, the witnesses and their act. (*Snyder* v. *Steele,* 287 Ill. 159.) All the authorities declare that the object of the law is to prevent fraud and imposition upon the testator or the substitution of a surreptitious will, and to effect that object it is necessary that the testator shall be able to see and know that the witnesses have affixed their names to the paper which he has signed and acknowledged as his will. As we view the facts presented by this record, there was no way testatrix could have known of her own knowledge that her will was being signed by the three subscribing witnesses and that she had not been imposed upon.

Counsel for defendant in error asserts that the attestation clause recites all the necessary facts, under the statute, for admitting the will to probate and was entitled to weight on the hearing in the circuit court. An attestation clause in proper form is entitled to due weight in determining whether a will was legally executed, but such a clause is not conclusive. *Harris* v. *Etienne, supra.*

In our opinion the requirements of the statute have not been complied with, and the judgment of the Appellate Court and the order of the circuit court of Cook county are reversed.

*Judgment reversed.*