## Maturiz Estate

*Emmett C. Boyle, Jr.*, and *H. Earnest Long*, for appellant.

*Fink & Jennings*, for proponents.

COPELAND, P. J., November 23, 1959.—This matter is before the court on an appeal from the probate of a will of decedent, Mary Maturiz. The will as probated is dated January 31, 1927, and decedent died October 13, 1956. By that will, testatrix devised her entire estate to her husband, Mike Maturiz. However, Mike Maturiz predeceased testatrix.

The appeal from probate is based upon the existence of an alleged later will dated October 13, 1956, the date of decedent's death. By this instrument decedent attempted to leave her entire estate to a friend, Elizabeth Straiter.

The will of October 13, 1956, was executed by mark and the sole question before the court is whether or not it was a valid execution. There is no dispute about the facts in this case.

The sole beneficiary under the last will was a long-time friend of decedent and decedent requested her to get an attorney who spoke Lithuanian to write a will. Decedent spoke Lithuanian and broken English. Elizabeth Straiter called such an attorney but he was unable to appear at the hospital where decedent was confined to her bed in an oxygen tent. The attorney gave Mrs. Straiter information about executing a will by mark and told her to write the will. Mrs. Straiter went to the hospital on the evening of October 13, 1956, with a small pad of paper and requested testatrix to give her information as to disposition of her property. She was advised by decedent that she, Elizabeth Straiter, was to have everything. This conversation was in Lithuanian and the substance of it was repeated in English to a Mrs. Mary Cendrick, the occupant of the next bed, at which time decedent nodded her approval.

Mrs. Cendrick had been asked by Mrs. Straiter to watch the execution of the will and to be a witness thereto. Mrs. Straiter wrote the will as instructed and had decedent make her mark unassisted. Then the name of decedent and the words "her mark" were immediately written around the mark and Mrs. Straiter signed her name in the presence of decedent. When this was done decedent may have been replaced in the oxygen tent and asked Mrs. Straiter to have the nurse get a glass of orange juice. Immediately thereafter, before the nurse could be called, decedent died. A nurse was called who looked at decedent and she, in turn, called an intern of the hospital who pronounced Mrs. Maturiz dead. After these events, which required but a few minutes, and while Mrs. Maturiz'

body was still in her bed, Mrs. Mary Cendrick signed the will as a witness to the mark. There was another signature on the will as witness to the mark but it is agreed by all parties that such signature was of no effect.

There is no contention of lack of testamentary capacity or of undue influence in this case, but the sole question is whether or not the execution of the will was in compliance with subsection 2 of section 2 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.2, which requires testator to make his mark in the presence of two witnesses who sign their names to the will in his presence.

The requirement that two witnesses sign the will in the presence of testator is new in the Wills Act of 1947 and there is very little interpretation of this provision by Pennsylvania courts. The question involved in this case is whether or not there was sufficient compliance with the requirement that the subscribing witness, Mrs. Cendrick, subscribed her name in the presence of testatrix.

It is necessary that there be strict compliance with the provisions of a wills act where the will is executed other than by testator's signature. In James' Estate, 329 Pa. 273, the court, in discussing section 3 of the Wills Act of June 7, 1917, P. L. 403, said, at page 275: "There must be strict compliance with these statutory provisions, and a will is not valid unless executed precisely in accordance therewith. If executed by mark, it is not a lawful instrument unless testator's name was subscribed in his presence and by his direction and authority: Hunter's Estate, 228 Pa. 484."

In a case decided under the Wills Act of 1947, testatrix signed her will by mark and one witness subscribed her name as required and another saw the execution of the will but did not subscribe her name. It was held that there was not a valid execution of

the will because the second witness did not sign as a subscribing witness: Gray Will, 365 Pa. 411.

While the question is not directly raised in this case, the direction and authority required under the Wills Act of 1917 to subscribe testator's name may be implied from actions and circumstances surrounding the execution of the will (Morris Will, 349 Pa. 387), but it has been held that, to show implied authority to sign testator's name to which he has made his mark, the evidence must show not only that it was done in his presence but also that he saw his name placed on the document or was in a position to observe the performance of that act: Hughes' Estate, 286 Pa. 466, 471.

Authorities from other jurisdictions hold that the words "in the presence of the testator", or similar words in a statute, require wills to be subscribed by witnesses in the "conscious presence" of testator. "In accordance with these principles, the subscription is not made in the testator's presence, if at the time of subscribing, from sleep or other cause, he is unconscious of the act of subscribing": 94 C. J. S. §189, p. 1023.

In the case of Walker v. Walker, 342 Ill. 376, 174 N. E. 541, the court held that proper attestation of a will does not take place in "presence of testator" if testator cannot see the act but merely concludes from surrounding circumstances that the attestation has taken place.

It was held in In re Cytacki's Estate, 293 Mich. 555, 292 N. W. 489, "in presence of" testator, with reference to attesting witnesses, need not absolutely be in actual sight of testator but must be done within his hearing, knowledge and understanding and so near so as to not be substantially away from him.

In In re. Demaris' Estate, 166 Ore. 36, 110 P. 2d 57, it was held that testator's consciousness of the

fact that attesting signatures are being written is an indispensable element under a statute requiring attestation in the presence of testator.

In view of the undisputed fact that only one subscribing witness placed her name on decedent's will while she was living, the court is obliged to find that the will of October 13, 1956, is not a valid will for the reason that it was not executed in accordance with the provisions of subsection 2, sec. 2, of the Wills Act of 1947.

The invalid will of October 13, 1956, contained no provision revoking any former will and, therefore, did not revoke the prior will which has been probated.

### Decree

And now, November 23, 1959, after hearing, the appeal from probate of the will of the above named decedent dated January 31, 1927, and the petition and citation thereon, are dismissed. Costs to be paid by the estate.