FIRST DIVISION
March 30, 2007

No. 1-07-0378

| | | |
|---|---|---|
| RITA ROSE RAMIREZ, | ) | Appeal from |
| | ) | the Circuit Court |
| Petitioner-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| PALOMA ANDRADE, | ) | |
| | ) | |
| Respondent-Appellant | ) | |
| | ) | No. 07 COEL 13 |
| (Board of Election Commissioners of the City of Chicago | ) | |
| as a Duly Constituted Electoral Board; Langdon Neal, | ) | |
| Chairman; Richard Cowen, Commissioner, in Their | ) | |
| Official Capacities as Members of the Board of Election | ) | |
| Commissioners of the City of Chicago as the Duly | ) | |
| Constituted Board; and Paloma Andrade, | ) | Honorable |
| | ) | Susan Fox Gillis, |
| Respondents). | ) | Judge Presiding. |

JUSTICE CAHILL delivered the opinion of the court:

Respondent Paloma Andrade appealed from an order of the circuit court that removed her name as a candidate for 14th Ward alderman from the ballot for Chicago's municipal general election of February 27, 2007. The circuit court had reversed a decision of the Board of Election Commissioners of the City of Chicago (Board) that had overruled the objections of petitioner Rita Rose Ramirez. Ramirez alleged that certain signatures on Andrade's nominating petition were invalid. Andrade appealed the circuit court's ruling. This court reversed the judgment of

the circuit court, allowing Andrade's name to appear on the ballot. This opinion supplements our order of reversal and states the legal basis and reasoning for our decision.

On appeal, Andrade raised a jurisdictional question in her reply brief. She claimed that the circuit court lacked jurisdiction to review the Board's decision because Ramirez failed to show proof of service in compliance with section 10-10.1 of the Illinois Election Code (Election Code or Code) (10 ILCS 5/10-10.1 (West 2004)) ("[t]he party seeking judicial review must file a petition with the clerk of the court within 10 days after the decision of the electoral board" and "serve a copy of the petition upon the electoral board and other parties to the proceedings by registered or certified mail and shall file proof of service with the clerk of the court"). Ramirez filed a surreply to which she attached a notice of filing, a certificate of service by certified mail on February 1, 2007, and service list. The service list included the Board, Andrade and her attorney and was file-stamped by the circuit court on February 1, 2007. These documents establish that Ramirez complied with section 10-10.1 of the Code (10 ILCS 5/10-10.1 (West 2004)). The circuit court had jurisdiction to review the findings of the Board, and so, then, do we.

The record shows that Andrade filed the nominating papers for her candidacy for alderman in Chicago's 14th Ward on December 18, 2006. Ramirez filed an objector's petition, alleging, among other things, that Andrade falsely certified that she was present when certain voters signed her nominating petition when in fact she was not present. Ramirez claimed to have evidence that Andrade falsely certified her presence when voters signed the petition sheets when she was actually sitting in a car parked at the curb in front of the houses where her campaign

workers were knocking on doors. This evidence was later shown to consist of 13 affidavits of people who alleged they had signed Andrade's petitions in the presence of a male, not a female. Section 10-4 of the Code (10 ILCS 5/10-4 (West 2004)) provides that a signature is not valid unless the circulator signs an affidavit, attesting to his or her "presence" when the petitions were signed.

The Board convened a hearing on the objector's petition and appointed a hearing examiner. On January 2, 2007, Andrade and counsel for Ramirez appeared before the examiner. The examiner requested an official record examination to be done by the Board's staff members. The examination was completed on January 8, 2007.

The examiner recalled the matter on January 12, 2007. Andrade and counsel for Ramirez again appeared. At that time, the hearing examiner read into evidence the official results of the record examination: Number of Signatures on Petition - 258; Number of Objections Overruled - 49; Number of Objections Sustained - 114; Number of Signatures Invalid Because of Circulator - 0; Number of Valid Signatures - 133; Minimum Signature Requirement - 109. Ramirez disputed the mathematical accuracy of the official record examination compilation sheet. She also argued that her objections pertaining to the circulator had in fact been sustained during the record examination, invalidating two signatures on sheet 12 and six signatures on sheet 6. The examiner then reduced Andrade's tally, finding eight signatures invalid because of the circulator. At that point, Andrade had 125 valid signatures, 16 more than the 109 required.

Ramirez then tendered 50 affidavits to support her allegation that certain signers had signed the nominating petitions of the only other candidate before signing her petitions. The

examiner allowed 36 objections. Fourteen were either withdrawn or overruled. So at the end of the hearing on January 12, 2007, Andrade's petition papers had 89 valid signatures, 20 short of the required 109.

The matter was recalled on January 15, 2007. An attorney filed an appearance on behalf of Andrade. Andrade sought to recover signatures lost at the earlier hearing. She identified a tabulation and scoring error on sheet 2, line 21. The examiner verified the error and restored one signature to Andrade for a total of 90 valid signatures. After overruling several of Andrade's claims, the examiner found that he had incorrectly sustained a claim that a signature on sheet 15 had appeared on both Andrade's and her opponent's petitions. Having gained another rehabilitated signature, Andrade now had 91 valid signatures. The hearing examiner next found that objections to the genuineness of a circulator's signature on sheets 12 and 16 should have been overruled, adding 8 more valid signatures for a total of 99. The examiner then reviewed Andrade's affidavits, resulting in a new total of 113 valid signatures. The examiner then reported finding a math error, giving Andrade 114 valid signatures. But the total was returned to 113 when Ramirez pointed out a previously unnoticed duplication.

The hearing resumed on January 17, 2007. The examiner found a math error, reducing Andrade's total to 112. The examiner heard testimony from the circulator of sheet 17 and the person who notarized sheet 17. The examiner then found that, based on the credible testimony of the witnesses, 4 signatures from sheet 17 were invalid, bringing the total to 108. The examiner then sustained another objector's claim of a person signing petitions for both Andrade and her opponent, taking the valid signature tally to 107. The examiner then considered affidavits

4

offered to support Ramirez's claim that the person circulating and presenting Andrade's nominating petition was a male, unaccompanied by a female. One affidavit addressed the circulation of sheet 6, seven affidavits addressed sheet 4, three affidavits addressed sheet 8 and two affidavits addressed sheet 15. The examiner at this point reserved ruling on these affidavits. The examiner then heard Andrade's challenge to an objection that had been sustained and overruled at the earlier call, taking Andrade's total to 108. At this point there were 13 affidavits before the examiner that challenged the "presence" of the candidate when the affiants signed the petitions.

The dissent's assertion (slip op. p. 14) that there was "not a single witness or affidavit stating that the candidate was present when the signatures were gathered" is not supported by the record. On the contrary, Andrade testified that she and two male campaign workers circulated the sheets, but "[she] had to take breaks because it was freezing cold, and sometimes [she would] be in the car to warm [herself] up. *** [She] was always supervising them. *** [She] was always present observing." She said she could see the person signing the petition because "[t]hey had the light on from the front. I saw when they came out. When they would open the door, I could see it right away." Andrade said she was out of the car for most of the signatures.

The hearing examiner stated in his written report to the Board that Andrade "testified credibly that she was either physically standing at the door when the petition sheet was handed to the signer, or in the car, driving in lockstep with those who physically tendered the documents to the signers." The examiner concluded that Ramirez had failed to meet her burden of proof that Andrade was not "present" because she did not establish how far Andrade was from the

5

doorsteps at issue when the petition sheets were signed. The examiner said: "Some doorsteps in Chicago are within a few feet of the curb. Others are more than 100 feet away. *** The objector had the ability to bring in such evidence *** yet at the close of the evidence this question remained unanswered."

At the conclusion of the hearings, the examiner found that Andrade was one signature short of the 109 signatures necessary to place her name on the ballot. The examiner recommended that Andrade's name be removed from the ballot. This recommendation was given to the Board.

The Board received the transcript of the hearing examiner's proceedings and the examiner's written report and recommendations. The Board met on January 29, 2007. It adopted some but not all of the examiner's recommendations. The Board agreed to the following findings: (1) a tabulation error on sheet 4 entitled Andrade to 20 valid signatures, 11 more than the 9 for which she received credit; (2) the examiner erred in striking one signature to which no objection had been made; and (3) the examiner erred in addressing Andrade's evidence pertaining to 3 printed signatures. The Board concluded that Andrade had 123 valid signatures, 14 more than the minimum requirement of 109. We note in passing that even if we found that the Board erred in accepting the credibility findings of the hearing examiner as to the candidate's "presence," that error would result in a loss of 13 signatures and a final tabulation of 110, one more than needed.

The transcripts of the Board's proceedings further show its members' concern that a "dangerous precedent" could be set by allowing the circulator in this case to observe signatures

from a car, but the members relied on the hearing examiner's finding that Andrade's testimony was credible. The Board determined that Andrade's testimony was not "inherently improbable." It found "support for both positions in the [hearing examiner's] transcript" and found "a number of issues that focus on the credibility and weight to be given the testimony." The Board overruled Ramirez's objections and declared Andrade's nominating papers sufficient and valid.

Ramirez sought judicial review of the Board's decision in the circuit court under section 10-10.1 of the Code (10 ILCS 5/10-10.1 (West 2004)). Section 10.1 provides that an objector can obtain judicial review of an electoral board decision in the circuit court of the county where the electoral board's hearing was held. 10 ILCS 5/10-10.1 (West 2004).

The circuit court reversed the decision of the Board, finding there was "no way" Andrade could have seen the voters sign her petition. The court accepted the 13 affidavits mentioned earlier rather than the findings of the examiner and the Board. The court relied on Moscardini v. County Officers Electoral Board, 224 Ill. App. 3d 1059, 590 N.E.2d 84 (1992), interpreting that case as requiring a circulator to have personal knowledge of a signature before signing the circulator's affidavit. Andrade appealed.

Where an administrative board's decision is reviewed by a circuit court under section 10-10.1 of the Code (10 ILCS 5/10-10.1 (West 2004)), we review the decision of the board, not the court. Rita v. Mayden, 364 Ill. App. 3d 913, 919, 847 N.E.2d 578 (2006). An election board is considered to be an administrative agency. See Allord v. Municipal Officers Electoral Board, 288 Ill. App. 3d 897, 903, 682 N.E.2d 125 (1997) ("Although not directly applicable [to the Election Code], the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 1996)) may be

7

1-07-0378

consulted").

In general, the factual findings and credibility determinations of an administrative agency are treated with deference and disturbed only if they are against the manifest weight of the evidence and the opposite conclusion is clearly evident. City of Belvidere v. Illinois State Labor Relations Board. 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998). The appropriate standard of review for a mixed question of fact and law arising from an administrative agency decision is the "clearly erroneous" standard. AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 395, 763 N.E.2d 272 (2001). Accord Samour, Inc. v. Board of Election Commissioners of the City of Chicago, Nos. 101902, 102227 cons., slip op. at 8-9 (January 19, 2007) ("this court has only applied the clearly erroneous standard to decisions of administrative agencies. [Citation.] In all other civil cases, we review legal issues *de novo* and factual issues under a manifest weight of the evidence standard"). "[W]hen we adopted the clearly erroneous standard of review for mixed questions of law and fact, we again recognized the experience and expertise of the agency and indicated that the standard would be deferential to some degree." AFM, 198 Ill. 2d at 395.

"A mixed question of law and fact asks the legal effect of a given set of facts." Comprehensive Community Solutions, Inc. v. Rockford School District No. 205, 216 Ill. 2d 455, 472, 837 N.E.2d 1 (2005). To resolve a mixed question of law and fact, "a reviewing court must determine whether established facts satisfy applicable legal rules." Comprehensive Community Solutions, 216 Ill. 2d at 472. Here, we must decide whether the established facts–that Andrade watched from a car while her campaign workers obtained some signatures for her nominating

8

petition–satisfy the presence requirement of section 10-4 of the Code. 10 ILCS 5/10-4 (West 2004).

Section 10-4 of the Code specifies the form of a petition of nomination of candidates for public office. 10 ILCS 5/10-4 (West 2004). In addition to spaces for the signatures and addresses of voters, the sheets of the petition must include at the bottom a circulator's statement, certifying that the signatures on the sheet were signed in his or her presence. 10 ILCS 5/10-4 (West 2004). Under section 10-8 of the Code, any legal voter in the candidate's district can file an objector's petition with the proper electoral authority. 10 ILCS 5/10-8 (West 2004). The electoral board is required to meet to hear and pass on the objections to nominations. 10 ILCS 5/10-10 (West 2004). The petitioner in an administrative proceeding has the burden of proof, and relief will be denied if he or she fails to sustain that burden. Iwanski v. Streamwood Police Pension Board, 232 Ill. App. 3d 180, 184, 596 N.E.2d 691 (1992). A candidate or objector who wishes to contest an electoral board's decision can obtain judicial review of the decision under section 10.1 of the Code. 10 ILCS 5/10-10.1 (West 2004).

Both the circuit court and the parties relied on Moscardini, 224 Ill. App. 3d at 1062, each interpreting that case as supporting their conclusions. There, an objector challenged signatures on a nomination petition where the candidate certified that she had observed voters signing her petition when in fact the candidate had not walked to the front door of each voter's house because of a degenerative bone disease that made walking painful. Moscardini, 224 Ill. App. 3d at 1060-61. The court concluded that legal precedent in Illinois did not require that "the person who signs the circulator's affidavit be the person who physically presented the sheet to each

9

signatory." Moscardini, 224 Ill. App. 3d at 1062. If the candidate actually saw each of the signatories sign the petition, there was no violation of the statutory requirements "even if she did not physically present the petition to some of them." Moscardini, 224 Ill. App. 3d at 1063. The court ordered the candidate's name placed on the ballot. Moscardini, 224 Ill. App. 3d at 1060.

We conclude based on our review of the record that the Board's decision to allow Andrade's name on the ballot was not clearly erroneous. The Board relied on the credible testimony of Andrade to establish the fact that she was present when the contested signatures were obtained. Ramirez presented affidavits of voters who stated only that no woman was with the man who handed them the petition. As in Moscardini, the fact that the circulator who signed the affidavit on the petition sheets here was not in the doorway is not conclusive on the issue of "presence." Based on this record, we cannot conclude that the decision of the Board was clearly erroneous.

We reverse the judgment of the circuit court and affirm the judgment of the Board of Election Commissioners.

Circuit court reversed; order of Board of Election Commissioners reinstated.

QUINN, J, concurs.

R.E. GORDON, J., dissents.

1-07-0378

JUSTICE ROBERT E. GORDON, dissenting:


I respectfully dissent to the majority opinion in this case. The standard for judicial review of an Electoral Board decision as to legal issues is to review the findings of the board *de novo*. Maske v. Kane County Officers Electoral Board, 234 Ill. App. 3d 508 (1992).

The record indicates that the hearing examiner on January 12, 2007, read into evidence the official results of the record examination: Number of signatures on petition 258, objections overruled 49, objections sustained 114, total number of valid signatures 133. The parties then stipulated to or agreed with that finding and the plaintiff objector worked from that figure and presented evidence to support the objector's position that the candidate did not have the minimum signature requirement of 109 valid signatures. At the conclusion of the evidentiary hearing on January 17, 2007, the hearing officer found that the candidate had a total of 108 valid signatures, one less than the required 109 minimum. The findings of the hearing officer then went to the Board of Election Commissioners of the City of Chicago (Board) recommending that the candidate's name be removed from the ballot.

The Board received a motion from the candidate alleging various irregularities in the hearing officer's final figures. Without determining the merits of the motion, the Board credited the candidate with 14 additional signatures so she could be a valid candidate in the aldermanic election, claiming it did not have the time to make a fair determination.

The hearing officer had reserved deciding 13 affidavits filed against the candidate which challenged the "presence" of the candidate as a circulator in signing certain nominating petitions

11

as an affiant to place her candidacy on the ballot. Section 10-4 of the Election Code provides that the circulator must at the bottom of each nominating petition certify that the signatures on that sheet were signed in his or her presence; that the signatures are genuine; and indicate either: (1) the dates on which that sheet was circulated, or (2) the first and last dates on which the sheet was circulated, or (3) that none of the signatures on the sheet were signed more than 90 days preceding the last day for the filing of the petition. The circulator must also certify that to the best of his or her knowledge and belief, the persons so signing were at the time of signing the petition duly registered voters of the political subdivision or district for which the candidate or candidates shall be nominated, and that their respective residences are correctly stated therein. The statement is an affidavit that "must be sworn to before some officer authorized to administer oaths in this State." 10 ILCS 5/10-4 (West 2004).

The evidence in this case showed that the candidate signed as the petition circulator on sheet 4 of her nominating petitions while she was sitting in a car or driving the car while two other people circulated the petition and gathered signatures door-to-door.

The petition circulator is required to swear to five separate things: (1) that the signatures were signed in his or her presence; (2) that the signatures are genuine; (3) that the signatures were gathered during the circulation period; (4) that the signers were, to the best of his or her knowledge, registered voters eligible to sign; and (5) that the signers' addresses were accurately reflected on the petition. The "presence" requirement is not only the first of these items, but it is also the only one that ensures that the remaining four requirements are also satisfied.

A circulator who is not present cannot determine whether a signature is genuine. For

example, how could a person waiting in the car be sure that a signer did not sign two, three or even four names of absent relatives? Likewise, an absent circulator cannot inquire, much less verify, that the signers are registered voters eligible to sign. The person in the car cannot ask the signers if they are registered to vote. At best, the car-seated circulator could attest only to the date of circulation and, perhaps, the residence addresses of the signers.

A person who waits in the car while others canvas petition signatures by going door-to-door cannot properly attest to the five matters required by section 10-4. The five elements of the circulator's affidavit are important tools that election authorities and courts can use to prevent fraud and protect the integrity of the election process.

The "presence" requirement was strictly enforced by this court in Moscardini v. County Officers Electoral Board, 224 Ill. App. 3d 1059, 1061 (1992), citing Fortas v. Dixon, 122 Ill. App. 3d 697 (1984). In Moscardini, the person who executed the circulator's affidavit went door-to-door with her son and a friend but would sometimes wait at the bottom of the stairs because she had a degenerative bone disease that made walking painful. But, she was never more than 20 feet from any signer and was able to see each person sign. Moscardini, 224 Ill. App. 3d at 1060. In addition, in Moscardini the people who accompanied the circulator provided corroborating evidence to support that the circulator was never more than 20 feet from any signer and was able to see each person sign. Moscardini, 224 Ill. App. 3d at 1061. As a result of that evidence, this court concluded that the circulator satisfied the "presence" requirement.

In the case at bar, the candidate stayed in the car, either parked or driving, and could not be close enough to witness signatures being signed at the front door of people's homes, nor could

she verify the other important elements of the circulator's affidavit. Unlike Moscardini, there was not a single witness or affidavit stating that the candidate was present when the signatures were gathered. Our Illinois Supreme Court held in Walker v. Walker, 342 Ill. 376 (1930), that witnesses to a will did not sign the will in the "presence" of the testatrix when the witness was sitting in a car while the documents were executed in a house, but visible through a window. Walker, 342 Ill. at 379. The result would be the same under the evidence in this case.

When the Board met on January 29, 2007, it heard no evidence, but the candidate filed a motion pursuant to Rule 20 of the Board's rules of procedure alleging that an error had been made by the Board when tabulating the results of the records examination and the Board credited the candidate with 11 more valid signatures, overruled the hearing examiner concerning 3 more signatures that were "printed names," both without determining the truth of the matter and disregarded the stipulation previously agreed to by the parties on January 12, 2007. Commissioner Cowen stated:

> "[T]his case comes to us at a very unfortunate time with no good choices, no answer that seems to meet the fairness of all the parties concerned and no time to do much of anything about it, I have to fall back simply on my preference for ballot access which is a poor way to have to decide these cases, but if it's a choice because of our mistake to say the candidate is off or because of our mistake the candidate is on, I simply can't penalize a candidate when it's our mistake."

The Board had no legal authority to disregard the stipulation of the parties that the starting point before certain objections were heard showed 133 valid signatures and had no authority to award the candidate with 14 additional valid signatures when its decision was not decided on the merits.

Giving 14 additional signatures to the candidate without any evidence of their validity was an abuse of the electoral process. Both the candidate and the objectors are entitled to the equal protection of the laws as made and provided. Although this matter is now moot, this writer would have remanded this case to the Board to make an accurate determination of the valid signatures of the candidate in order to protect the integrity of the election process. By awarding the candidate the 14 additional signatures, the Board assured the candidate a valid spot on the ballot. If the 13 objections to the "presence" of the circulator were sustained, the candidate would thus have the minimum number of signatures to remain as a viable candidate. The decision of the circuit court should be affirmed, and the decision of the Board of Election Commissioners should be reversed with instructions.