Mary Ellen Ludwig, et al., Mary Ellen Ludwig and Vinetta M. Mead, Appellants, v. Mabel Sommer, et al., All Minors and William J. Reardon as Guardian of the Estates of Vincent William Turner, et al., All Minors, Appellees.

Gen. No. 64–17.

Third District.

November 16, 1964.

Edwin V. Champion, of Peoria, and Harlington Wood, Jr., of Springfield, for appellants.

Arthur B. Copeland, of Peoria, for appellees, and William J. Reardon, of Pekin, for certain defendants-appellees, and pro se.

CARROLL, J.

This is an action for interpleader brought by plaintiff, Thomas E. Kirby, manager of a tract of land known as the Gumm Farm, in which he asked the

Circuit Court to determine the person or persons entitled to receive certain income from said farm which was then in his possession. Joined as defendants were the children and grandchildren of Vincent P. Turner, Sr., deceased, who owned a one-third interest in the Gumm Farm at the time of his death.

Disposition of Turner's interest in said farm was made by the fourth paragraph of his Last Will and Testament, which is in pertinent part as follows:

> "To my wife, Emma Coon Turner, the net income from my undivided one-third ($\frac{1}{3}$) interest in the Gumm Farm, Kilbourne Township, Mason County, Illinois, for and during her natural life, and at her death to revert back to my heirs, then living."

The controversy in this case arises from the conflicting claims to the Gumm Farm income advanced by the surviving children of the testator and those made by his grandchildren.

The testator had four children. Two of these children, Mary Ellen Ludwig and Vinetta Mead, are surviving. They joined in an answer to the complaint, claiming the exclusive interest to the income from the farm. The other two children of the testator, Robert Turner and Vincent Turner, Jr., are deceased. Robert was born of the testator's first wife and Vincent, Jr. of the testator's second wife. The children of Robert joined in an answer and the children of Vincent, Jr. joined in a separate answer. In these answers all of said grandchildren claimed that they, together with the surviving children of the testator, have an interest in the income of the farm.

The cause was heard on the pleadings and stipulation of facts and as a result the court held that the testator's two children each has a one-fourth interest in the Gumm Farm and that each of the grandchildren

has the per stirpes share of their deceased parent. From this ruling Vinetta M. Mead and Mary Ellen Ludwig have appealed.

Appellants contend that the issues in this proceeding were determined by a prior decree entered by the Circuit Court of Peoria County in a suit to construe the Will of Vincent P. Turner, Sr., deceased. This suit was brought in September of 1934, or about a year after the testator's death. The decree in that case recites that it was the intention of the testator, Vincent P. Turner, that "Each of his said four children should take a vested interest in the real estate specifically devised to them at the date of the death of said testator except as to their interest in the premises described as the Gumm Farm, which is a contingent interest dependent upon their survivorship of the widow, Emma Coon Turner." Said decree further recited that it was the intention of the testator that his interest in the Gumm Farm "should be taken only by those of his heirs who should survive his widow . . . and that the interest of his said children in . . . the Gumm Farm, should be contingent upon their survivorship of the widow. . ."

In 1953 a suit to partition the Gumm Farm was filed in the Circuit Court of Mason County and culminated with a decree which set off and allotted the one-third interest owned by the testator at his death in accordance with the testator's will, as construed in the above described proceedings in the Circuit Court of Peoria County.

Appellants assert that in said prior decree construing the will the court held that the testator intended that only his children should share in the remainder interest in the Gumm Farm and that under the doctrine of res judicata such decree is conclusive and binding upon the children of Robert S. Turner and Vincent P. Turner, Jr. who are defendants in the instant case.

As to those grandchildren of the testator who were not made parties to the prior suit because they were not in existence, it is nevertheless contended that they were fully represented in such suit by their parents; that their interest therein was identical with that of their parents; and that under the doctrine of virtual representation, the decree is binding upon the grandchildren's interest.

■ The doctrine of virtual representation, as it is applied to successive estates or interests, was clearly set forth in Weberpals v. Jenny, 300 Ill 145, 155, 133 NE2d 62. The court there stated that:

"Where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him. It must appear that he stands in the same situation as parties before the court and that he has a common right or interest with them, the operation and protection of which will be for the common benefit of all and cannot be to the injury of any."

■ Obviously such doctrine is not applicable to the facts in the case at bar. How can it be said that there exists a community of interest between those to be bound and their representatives when the current position of such representatives is that those they represented have no interest in the property? Mortimore v. Bashore, 317 Ill 535, 148 NE 317.

Having concluded that the prior decree in the will construction case is not res judicata against the grandchildren of the testator, the remaining question is whether the court below correctly construed the will of Vincent P. Turner, Sr. We are of the opinion that it did.

■ The devise in question was to "heirs." Normally, this term is considered to mean the persons on whom the law casts inheritance. Pereboom v. Cloyd, 317 Ill 85, 147 NE 382. This term may, however, be construed to mean children or grandchildren, but such meaning cannot be assigned unless it clearly appears that it was employed by the testator in that sense. Freudenstein v. Braden, 397 Ill 29, 72 NE2d 832.

Appellants argue that the testator did not use the word "heirs" in its technical sense when devising the remainder interest in the Gumm Farm, but used it as being synonymous with "children," his intention being that the remainder was to be taken by those of his children who survive the life tenant. There are, therefore, two Subpoints to this argument of the defendants: first that the word "heirs," as used in the testator's will, was used synonymously with children; and second, that, if the word "heirs" was used by the testator in its technical sense of meaning those who would be entitled to inherit if the decedent had died intestate, then those heirs should be determined as of the time of the testator's death. (The only "heirs" of the testator at the time of his death were his second wife and four children. The wife and two of the children are now deceased and only the two appellants, children of the testator, survive.)

In support of their position that the time for determining the heirs of the testator should be at the date of his death, appellants rely principally on Comisky v. Moore, 26 Ill2d 494, 187 NE2d 256. In the Comisky case, the testator devised separate 160-acre farms to each of his seven sons for life and disposed of the remainder interest in such farms by the following language: ". . . to have and to hold the same for and during the term of his natural life, with remainder to his children in fee, but if he should die leaving no lawful children, then the same shall revert to my estate

77

and be equally divided among my surviving children, they each to take a life estate in their several parts so reverting, if any, with remainder in fee to their children . . . ." The Circuit Court construed the words "surviving children," as used in the will, to refer to those children surviving the testator rather than those that survived an intermediate life tenant. On appeal the trial court's construction of the will was affirmed and in reviewing the law applicable to determining the time referred to by a testator, where vesting of a devise follows termination of a life estate, the Supreme Court had this to say:

"The determination of the time of reference intended by the testator where words of survivorship are used in a devise or bequest of a remainder, after an intervening life estate, is a subject that has caused much difficulty among the courts. Several jurisdictions have taken the position that, presumptively, these words refer to the death of the testator. (Estate of Nass, 320 Pa 380; Aldred v. Sylvester, 184 Ind 542; Sturgis v. Sturgis, 242 Mich 52), and, where the limitation over at the termination of the life estate is to lineals, against a construction that would result in the disinheritance of an heir. (Estate of Nass, 320 Pa 380.) These policies have been recognized and, under certain circumstances, followed by this court. (See, e.g., Pontius v. Conrad, 317 Ill 241; Hartwick v. Heberling, 364 Ill 523.) Although at one time the Illinois law in this area appeared somewhat uncertain (compare Thompson v. Adams, 205 Ill 552, with Murphy v. Westhoff, 386 Ill 136), it is now well settled in this state that words of survivorship in the limitation of a remainder presumptively have reference to the termination of the intermediate estate. Harris Trust & Savings

78

Bank v. Jackson, 412 Ill 261 (1952); O'Connell v. Gaffney, 23 Ill2d 611.

"However, this is only a rule of construction founded upon the presumed intent of the Testator and an intent expressed by the Testator that the words of survivorship should be referred to the date of his death would be given effect. We feel that such an intent has been expressed in this case."

The court concluded that it was the intention of the testator that the surviving children that are to be the remaindermen should be determined as of the date of the death of the testator and not as of the date of the death of the life tenants.

■ Appellants argue that in the instant case, as in the Comisky case, the words "revert back" indicate that the testator must have intended for the remaindermen to be determined as of the death of the testator. Since in will construction cases, the guiding light is the intention of the testator, an examination must be made of the facts which the court considered in the Comisky case. Referring to the language of the will the court stated, "It was provided that if the life tenant should die leaving no lawful children 'then the same shall revert to my estate and be equally divided between my surviving children.' This language clearly indicates that the decedent was thinking of at least his estate as of the date of his death and not the death of the life tenant. In each of the seven devises of testator's farms 'revert' is used on two occasions, once before providing for new life estates in his surviving children and once afterwards. . . . it appears clear that when the testator referred to his estate as of the date of his death he must also have been considering his surviving children, all of whom were specifically named in the will, as of that date."

The similarity, therefore, between Comisky and the instant case is that the word "revert" is used in both.

█ If the use of the word "revert" were the only indication we had as to the testator's intention, we might be inclined to agree with appellants that the Comisky case is controlling. However in the will of Vincent Turner, Sr. there are other words which furnish a dependable clue to the testator's intention. The phrase in question states that the remainder was "to revert back to my heirs, *then living*." (Emphasis supplied.) We think the words "then living," as used by the testator, indicated his intention that his interest in the Gumm Farm should go to his heirs living at the death of Emma Coon Turner, the life tenant for the reason that he used the word "then" as an adverb of time, referring to the death of said Emma Coon Turner. Bergendahl v. Stiers, 8 Ill2d 257, 133 NE2d 280; Sloan v. Beatty, 1 Ill2d 581, 116 NE2d 375. If he had intended that only his children should share in the Gumm Farm interest then there would have been no occasion to use the words "my heirs, then living." Since the testator saw fit to direct that the persons who were to share in the Gumm Farm should be determined as of the date of the termination of the Emma Coon Turner life estate the trial court had no choice other than give effect to his expressed intention.

For the reasons indicated the decree of the Circuit Court of Tazewell County is affirmed.

Affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.