*In re* ESTATE OF JAMES O. McCABE, Deceased.—(SHEILA BENTHALL, Petitioner-Appellee, *v.* FRANCIS McCABE *et al.*, Ex'rs and Trustees of the Will of James O. McCabe, Respondents-Appellants.)

Fifth District   No. 80-30

Opinion filed March 31, 1981.—Rehearing denied May 28, 1981.

Walker & Williams, P. C., of Belleville (James R. Kalish, of counsel), for appellants.

Callahan & Moran, of Trenton (Kathleen Moran, of counsel), for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

At issue in this appeal is the validity of a family settlement agreement executed by the three children of the decedent, James McCabe. After his death on September 22, 1978, his brother and sister, Francis McCabe and Betty June Luck, who were nominated as "joint-Executors and Joint Trustees" of his will, filed a petition, on October 1, 1979, for the admission of the will to probate and for the issuance of letters testamentary. Thereafter, on October 16, 1979, the three children, Sheila Benthall, aged 31, James Edward McCabe, aged 19, and Colleen Marie McCabe, aged 18, executed a family settlement agreement disposing of the assets of their father's estate in a manner different from that provided for by him in his will.

On October 17, 1979, Sheila Benthall petitioned the court for issuance of letters of office to her as administrator of her father's estate and for express approval of the family settlement agreement. In an order entered on December 14, 1979, the trial court found "[t]hat all the heirs of the decedent have entered into a bona fide Family Settlement Agreement which resolves any disputes as between them and provides for an amicable settlement of decedent's estate" and "[t]hat the Family Settlement Agreement should take precedence over the Petition for Probate of Will so as to avoid unnecessary litigation and a potential contest of decedent's will." As a result of its findings, the trial court denied the petition for admission of the will to probate and issuance of letters testamentary and, at the same time, allowed the petition for the appointment of administrator to carry out the terms of the family settlement agreement, which the court expressly approved. From that order the co-executors and trustees designate appeal.

In his will James McCabe provided first for the payment of his debts and funeral expenses and then devised and bequeathed the remaining property to the trustees to be distributed in the following way:

"(a) To Sheila Benthall * * *, my daughter from my first marriage the sum of Twenty five hundred ($2500.00) dollars to be paid out of my savings account at the Granite City Trust and Savings bank, if there is therein remaining. And in addition all horsehold [sic] goods and furniture within the residence at 2112 Lynch ave. [sic], Granite City, Illinois.

(b) My funeral expenses shall first be paid by my TRUSTEES and EXECUTORS from my Savings account at Granite City Trust and Savings bank first before the sum mentioned in (a) shall be paid to my daughter Sheila Benthall from my first marriage.

(c) All the rest and residue of my estate then remaining shall be divided equally between my two children from my second marriage, namely, JAMES EDWARD McCABE and COLLEEN

MARIE McCABE when they reach their 21st birthday, except my automobiles, a 1960 Cadillac and 1974 Ford which shall be turned over to my son JAMES EDWARD McCABE.

(d) If my two children from my second marriage are minors at the time of my decease my TRUSTEES shall create a TRUST FUND deposit at the Granite City Trust and Savings Bank and shall pay to JAMES EDWARD McCABE and COLLEEN MARIE McCABE, my two children the sum of Four Hundred Dollars ($400.00) to each toward their support and education until they reach the age of 21 years."

A third provision of James McCabe's will deals with his interest in a business partnership:

"Regarding my business being a full partner—Granite City Motor express [sic]—if this business is in existance [sic] at the time of my decease, my partner should have first option to purchase my interest therein."

The family settlement agreement lists the following as the sole assets and debts of the estate of James McCabe:

"1. Three automobiles—1977 Chevrolet Impala; 1974 Ford LTD; and 1973 Pontiac Graville [sic]: value—approximately $4,000.00

2. Residence—2112 Lynch Avenue, Granite City, Illinois—approximate value $35,000.00.

3. Deposits in the Granite City Trust & Savings Bank in the amount of $36,752.54.

4. One-half interest in Granite City Motor Express—assets and liabilities unknown.

The sole debts of the estate known to the heirs are as follows: Visa Charge—$772.47, Glik's Charge—$39.67, Funeral Bill—$2,666.35."

Like the will, the family settlement agreement provides for the payment of any debts. It provides as well for the payment by the children of any inheritance taxes. Unlike the will, the agreement goes on to provide that James and Colleen "who are the children of Mary Maher McCabe shall receive as their separate property, any and all property that their father received from the estate of their mother, Mary Maher McCabe. Sheila Benthall agrees to transfer any interest that she might have to them by quit claim deed or assignment." There is no indication in the record of the value of any property James McCabe received from the estate of Mary Maher McCabe. Nor is there any indication in the record that any such property is not included among James McCabe's assets as they are listed in the family settlement agreement. The agreement further provides that "all other assets, after the payment of the debts of the estate, shall be equally divided between Sheila Benthall, James E. McCabe and Colleen

McCabe" and that "any decision concerning the business of Granite City Motor Express shall be made by a majority vote of the three heirs." James McCabe's business partner is not a party to this agreement, and no mention is made of any option to purchase James McCabe's interest in the partnership.

In Illinois courts look favorably upon the settlement of disputes among family members by agreement. (*Anderson v. Anderson* (1942), 380 Ill. 488, 44 N.E.2d 43.) Like any other contract, an agreement settling a dispute among family members over a decedent's estate, to be valid, requires sufficient consideration. (*Anderson.*) Of such consideration the court in *Anderson* said,

> "The disputes between rival claimants to an estate are fair subjects of compromise and settlement, and the mutual concessions of the parties for the prevention of litigation afford a valid consideration for the agreement. * * * It goes without saying, however, that there must be some reasonable or substantial basis for the claims advanced by the parties which are surrendered by the agreement." (380 Ill. 488, 496, 44 N.E.2d 43, 47.)

The court in *Wolf v. Uhlemann* (1927), 325 Ill. 165, 183, 156 N.E. 334, 340-41, described with some particularity what constitutes a "reasonable or substantial basis" in such a dispute:

> "Where there is a reasonable or substantial basis for the belief or assurance that prolonged and expensive litigation will result over the proceeds or distribution of an estate, that the estate will be materially depleted and that the family relationship will be torn asunder, the parties interested therein are warranted in preventing such *bona fide* family controversy by a settlement agreement. Obviously, such an agreement must be impartial in every respect and must be obtained without fraud or deception."

The court there observed, "[u]ndoubtedly, the members of a family are not privileged to alter the terms and provisions of a will merely for the convenience of the family or for the sole purpose of securing greater individual financial advantages than those specified in the will and intended by the testator." 325 Ill. 165, 183, 156 N.E. 334, 340.

In the case at bar appellees contend:

> "The agreement entered into between the three adult heirs of James O. McCabe is a fair and equitable agreement. The agreement itself reflects adequate consideration. The eldest daughter, Sheila Benthall, will receive far less than her statutory share under the family agreement. If she were to contest the Will and win, she would receive one-third of James O. McCabe's estate, which includes a one-third interest in the estate of his deceased wife, Mary McCabe. While the younger two children will potentially

receive less than they would have received under their father's Will, they are receiving more than an intestate share of his estate. Clearly, the heirs have compromised and settled their property rights in a fair and just manner."

In the family settlement agreement itself the parties to it recite only that the will of James McCabe is subject to challenge; they give no reason for such a challenge:

"All of the above named heirs recognize that a document purported to be the Last Will and Testament of James McCabe exists * * *. All agree and recognize that said purported Will is subject to challenge and all three children desire to avoid controversy. Since all three children are the sole heirs of his body and also the sole legatees under the Will, they desire to enter into an agreement to equitably and justly settle his estate in order to avoid family conflict."

However, at the joint hearing on the petition for admission of the will to probate and issuance of letters testamentary and the petition for issuance of letters of office to Sheila Benthall as administrator, counsel for the heirs argued, as she does in her brief on appeal, that the testamentary trust purportedly created by the will is fatally defective because material terms were not certain in two instances. We quote from the brief:

"To create a valid Trust, the Trust instrument must be reasonably certain in its material terms. This one is not. The provision states that the children are to be paid 'the sum of Four Hundred Dollars ($400.00) to each toward their support and education until they reach the age of 21 years.' This Trust does not specify [*sic*] the $400.00 payment is per day, per week, per month or per year. Furthermore, the Trust only gives the Trustee the power to sell the real estate but does not give the Trustee the power to manage the business or the real estate."

■■ Appellants point out correctly in their reply brief that the Trusts and Trustees Act (Ill. Rev. Stat. 1979, ch. 148, pars. 101-120) (hereinafter the Act) would give the trustees the necessary powers to manage the trust. Section 3 of the Act (Ill. Rev. Stat. 1979, ch. 148, par. 103) provides:

"(1) A person establishing a trust may specify in the instrument the rights, powers, duties, limitations and immunities applicable to the trustee, beneficiary and others and those provisions where not otherwise contrary to law shall control, notwithstanding this Act. The provisions of this Act apply to the trust to the extent that they are not inconsistent with the provisions of the instrument."

Since the power to manage the trust in the various ways set forth in the Act is plainly not inconsistent with any of the relatively few provisions of James McCabe's will, the trustees would have that power by operation of

law, and the testator's failure to specify the power of management in the instrument could not defeat the trust. In view of the fact that our legislature has provided a remedy for omissions of just this kind in trust instruments, it is simply absurd to suggest that the omission here of the powers of management could lead to prolonged and expensive litigation that would deplete the estate.

With respect to the other troublesome provision of the will cited by appellees, that is, the provision which calls for the payment of $400 toward the support and education of the two younger children "until they reach the age of 21 years," in a legal dispute this paragraph would require construction by the court to determine whether the children may receive more than $400 each before reaching the age of 21. That question is not, of course, before us. To decide the question that is before us, the validity of the family settlement agreement, we perceive that, should either of the two younger beneficiaries under the will seek to have distributed an amount larger than $400 prior to reaching the age of 21, any dispute that might arise would take place between one of those two beneficiaries and the trustees under the will. In no event could the question of whether either of the two younger children is entitled to more than $400 before the age of 21 have any bearing upon the amount to which the third and eldest child is entitled under the provisions of James McCabe's will. We fail to see how this particular matter of construction could possibly make "rival claimants" of these three beneficiaries so as to engender any family conflict whatever.

■■ In light of these conclusions we agree with appellants that the consideration for the family settlement agreement was insufficient. We therefore hold that this contract fails for lack of adequate consideration, that is, for lack of a reasonable or substantial basis for any claims surrendered by it. Although a family settlement agreement may under certain appropriate circumstances supersede a will, in no case will the court permit a testator's disposition to be set aside lightly. Otherwise, the Probate Act would be subverted, and the intent of a testator would come to nought. The instant case, were the agreement at issue acknowledged, would be a striking example of the consequences of overturning a testator's dispositive scheme merely upon the ill-conceived threat of a contest. This agreement would have permitted the eldest child to receive more and the younger children less than the testator intended despite his apparent deference to the fact that the estate of the younger children's mother was included in his own. Furthermore, this agreement would have permitted an accelerated distribution to young persons aged 18 and 19 in obvious contravention of the express wish of their father in the spendthrift clause of his will. James McCabe attempted what seemed to him a fair and wise disposition of his worldly goods, and we hereby honor it.

We note further of this particular agreement that though the parties to it state in it that they are the "sole legatees" under the will, James McCabe's business partner, who under the will received the "first option to purchase" decedent's full partnership interest, is neither a party to this agreement nor mentioned in it. An agreement that overlooks a beneficiary of the will and denies his bequest may hardly be said to be impartial, as the law requires.

For the foregoing reasons we reverse the judgment of the circuit court that recognized and implemented this family settlement agreement, and we remand the cause to that court for the purpose of going forward with proceedings for probate of decedent's will.

Reversed and remanded.

KASSERMAN, P. J., and HARRISON, J., concur.