In re ESTATE OF LILLIAN BROWNELL LYNCH, Deceased.—(VIRGINIA LUCILE MISSAVAGE et al., Plaintiffs-Appellants, v. MONMOUTH TRUST AND SAVINGS BANK, Ex'r of the Estate of Lillian Brownell Lynch, Defendant-Appellee.)

Third District    No. 81-274

Opinion filed January 29, 1982.

Robert L. Ellison, of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellants.

Richard L. Whitman, Sr., of Kritzer, Stansell, Critser & Whitman, of Monmouth, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This appeal lies from orders of the circuit court of Warren County, which admitted to probate and afterwards confirmed admission of the will of Lillian Brownell Lynch. Plaintiff, Virginia Missavage, is a pretermitted heir of the testator and plaintiff, David Missavage, is one of her children, likewise pretermitted in a distribution to certain ones, but not all, of the testator's grandchildren. Defendant is the corporate executor nominated in the will.

The testator died on October 30, 1980, and on October 31, 1980, a daughter, Mary Lemoine, who together with her children received the bulk of the estate under the will, filed a petition to probate the instrument dated February 4, 1980.

On the same day, October 31, 1980, the trial court took testimony regarding heirs left by the testator and found plaintiff Virginia Missavage and Mary Lemoine, her daughters, to be her sole heirs. The court also considered the affidavits of the subscribing witnesses and admitted the will to probate.

On November 3, 1980, notice of such admission was sent to all interested parties and on December 12, 1980, plaintiffs filed a petition for formal proof of the will pursuant to section 6—21 of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 6—21). A hearing on the petition was held on May 6, 1981, and the trial court, after hearing the testimony offered, confirmed the order of October 31, 1980, which admitted the will to probate. It is from this order that plaintiffs appeal.

Plaintiffs, as their sole issue, raise the sufficiency of the evidence. However, the defendants have raised another issue which must be dealt with first, namely, the appealability of the order in question.

It has been generally accepted that an order admitting a will to probate is not a final order within the meaning of Supreme Court Rules 301 and 303(a) (73 Ill. 2d Rules 301, 303(a)), since the probate process represents a continuum of proceedings and an order of admission normally is among the first to be entered. However, most of the case law on the subject did not deal with it directly since some other action had intervened, generally to contest the will itself. For example, *In re Estate of Kvasauskas* (1972), 5 Ill. App. 3d 202, 282 N.E.2d 465; *In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 386 N.E.2d 862 (which included a summary judgment problem); *Sternberg v. St. Louis Union Trust Co.* (1946), 394 Ill. 452, 68 N.E.2d 892.

All of these cases, and others, laid down by way of dictum that an order admitting a will to probate was not a final order. In view of the fact

that those courts were dealing with will contests, not admission orders, the statement may be taken as true but not necessary to the decision. The significance is that will contests by their nature include the same issues as are present in an admission proceeding, but the reverse is not likewise true. The admission proceeding is limited to a determination as to whether a *prima facie* showing of compliance with the statutory requirements set forth in section 6—4 of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 6—4) has been made. *In re Estate of Ketter* (1978), 63 Ill. App. 3d 796, 380 N.E.2d 385.

The inquiry then must separate the question of finality from the question of appealability. Assuming that an admission order is not final, can it nonetheless be appealable? Supreme Court Rule 304(b)(1) (73 Ill. 2d R. 304(b)(1)) appears to make it so. That rule states in pertinent part:

> "(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:
>
>> (1) A judgment or order entered in the administration of an estate, guardianship, conservatorship, or similar proceeding which finally determines a right or status of a party."

The Committee Comments (revised October 1969) to this Rule state in pertinent part:

> "Subparagraph (1) applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. Ann. Stat., ch. 110A, par. 304, at 347 (Smith-Hurd Supp. 1981-1982).

In a number of decisions both the supreme and appellate courts of this State have considered orders admitting wills to probate on the merits. (*In re Estate of Millsap* (1979), 75 Ill. 2d 247, 388 N.E.2d 374; *In re Estate of Marcucci* (1973), 54 Ill. 2d 266, 296 N.E.2d 849; *In re Estate of Netherton* (1978), 62 Ill. App. 3d 55, 378 N.E.2d 800.) In none of these cases did the court hold that the order was not appealable.

■■ Some doubt was cast upon the matter by the decision in *In re Estate of Martino* (1979), 72 Ill. App. 3d 867, 391 N.E.2d 412, wherein the appellate court held that an order admitting a lost will to probate was not appealable under Supreme Court Rule 304(b)(1). This decision was the subject of a lengthy comment in 68 Ill. B.J. 97 (1979). We believe that the statement was by way of dictum since a will contest under section 8—1 of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 8—1) was underway at the time the notice of appeal from the admission order was filed. The court held that the will contest rendered moot the questions raised under the appeal of the admission order since the same issues would be litigated

in that proceeding. It is true that the admission of a will to probate is not *res judicata* on issues raised in a will contest. (*In re Estate of Carr* (1970), 126 Ill. App. 2d 461, 262 N.E.2d 54.) Doubtless it was this aspect that led the *Martino* court to declare that the appeal from the admission order was moot. However, it does not follow that the order is unappealable.

If no contest proceeding had been filed, or if, as in the instant case, the 6-month limitation period for filing such a contest under section 8—1 has expired, there would be no remedy. It should be noted in this connection that a petition for formal proof under section 6—21 does not toll the limitation under section 8—1.

Obviously, the end result of a successful reversal of an admission order or of a successful will contest is the same, but the procedures and the quantum of proof are quite different in the two types of litigation. An admission proceeding only establishes that the statutory requirements of section 6—4 have been met and a *prima facie* showing of validity has been made. (*Marcucci.*) The purpose of a contest is to give the contestant a full opportunity, after admission, thoroughly to investigate all the circumstances affecting the validity of the instrument. (*Sternberg; Carr.*) If the opponent to admission believes that his better case is in that posture, he should not be forced into the position of a contestant. However, he should not be permitted, in the interests of judicial economy, to pursue both remedies simultaneously. In this sense, the *Martino* court was entirely correct, and the proper procedure in the event of a contest filed subsequently to a notice of appeal from an admission order would be a motion to dismiss in the reviewing court. The contest renders the appeal moot but does not enervate its original viability.

■■ We hold that an order admitting a will to probate is appealable under Supreme Court Rule 304(b)(1).

One further comment concerning *Martino* is in order. That case, relying upon *Ketter* and *Sternberg*, held that once a will contest has been instituted, the order of admission has no further force and effect. We cannot agree. At a minimum, section 8—1(e) of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 8—1(e)) requires the personal representative to defend a will contest. If his letters are of no force and effect, this would be impossible. Such an anomalous result could not have been intended by the legislature. Furthermore, if the administration of the estate were to grind to a halt during the contest proceedings, rents, dividends, interest, and other income items would remain uncollected and unaccounted for, depreciating assets could not be disposed of, debts could not be investigated and either resisted or paid, and the entire estate could become subject to waste. One of the purposes of the Probate Act is to expedite administration of the estate while permitting those who wish to question the validity of the will an adequate opportunity to do so. (*Carr.*) The same

may be said of the pendency of an appeal from an admission order. Of course, if the opponent of admission is successful on appeal, or if the contestant is ultimately successful in his litigation, the power of the personal representative will be at an end upon making a proper accounting to his successor; but until such time, the admission order must necessarily stand.

We turn next to plaintiffs' principal contention that the admission order was against the manifest weight of the evidence. As in all cases disputing the evidentiary record, the decision of the trial court is entitled to great deference. We find no basis here for disturbing its findings.

Much of the testimony taken at the formal proof hearing under section 6—21 of May 6, 1981, would be more appropriate to a will contest. That section of the Probate Act requires oral testimony and forbids reliance upon an attestation clause or upon affidavits, but does not alter the three elements to be established under section 6—4(a).

Plaintiffs contend that the testator was of advanced age and poor eyesight and therefore could not observe the attestation of the witnesses. They rely on *Quirk v. Pierson* (1919), 287 Ill. 176, 122 N.E. 518, but the factual situation there was much different. In *Quirk*, the testator signed in the presence of the witnesses who then took the instrument into an adjoining room for signature. There was no evidence that the testator, who was bedridden, could see the signing. In the instant case, both attesting witnesses testified that all signatures were affixed in the presence of the testator and of each other. The essential thing is that the testator must have the opportunity of personal knowledge from his own vision and his actual position. It is not sufficient that he merely deduce from the circumstances what is happening. (*Quirk*.) Here all of the proof was that all persons were in the actual presence of each other at the time of signing and knew the purpose therefor. Even with her failing vision, there would be no necessity for the testator to deduce what was happening.

Plaintiffs also contend that the testator did not understand that the document was her will. Initially we note that there is no such requirement under section 6—4(a), but even so, there was testimony from one of the witnesses that she understood the nature of the document and used the word "will" with reference to it. There was further proof that the attending attorney read the instrument to the testator. There was no further proof of serious mental impairment, so it must follow that the testator knew what she was signing.

All of the three attesting witnesses testified that they believed the testator to be of sound mind and memory. One of them indicated some mild impairment in the past while the testator was reminiscing about childhood incidents. Nonetheless, all three (section 6—4(a) requires only two) testified specifically as to their beliefs that she was of sound mind.

These witnesses had been associated with the testator over a long period of time.

■■ An order admitting a will to probate will be set aside only on clear and satisfactory proof of some incapacity in the testator. (*Pepe v. Caputo* (1951), 408 Ill. 321, 97 N.E.2d 260.) Such has not been shown here.

The orders of the circuit court of Warren County are affirmed.

Affirmed.

GREEN, P. J., and LONDRIGAN, J., concur.