ALBA M. KINKIN *et al.*, Trustees, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. MARY MAGNANI MARCHESI, Defendant-Appellant and Cross-Appellee.

Third District   No. 3—92—0009

Opinion filed October 29, 1992.

Donna Engels and Linda A. Giesen, both of Law Offices of Henry S. Dixon, of Dixon (Henry S. Dixon, of counsel), *for appellant*.

Charles W. Helmig, of Granville, *for appellees*.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Mary Magnani Marchesi, appeals from a judgment entered in favor of the plaintiffs, Alba M. Kinkin, Minnie Johnson and Raymond A. Johnson. The plaintiffs have filed a cross-appeal.

The instant dispute has its origins in the will of Virgilio and Dalema Cattani. The record shows that Dalema was the second wife of Virgilio. The plaintiffs Alba Kinkin and Minnie Johnson are the children of Virgilio by his first marriage. Plaintiff Raymond Johnson is Minnie Johnson's son and Virgilio's grandson. The record also shows that Minnie Johnson died during the course of the proceedings below.

The will was signed by Virgilio and Dalema on November 3, 1975. It stated in pertinent part:

"Last Will and Testament
of
VIRGILIO CATTANI
AND
DALEMA CATTANI

WE, VIRGILIO CATTANI AND DALEMA CATTANI, husband and wife, of the Village of Mark, County of Putnam and State of Illinois, each being of sound and disposing mind and memory, do hereby respectively make, declare, establish and publish this instrument to be jointly as well as severally our Last Will and Testament, hereby revoking any and all wills and codicils heretofore made by us, or either of us, and we do hereby mutually agree that our purpose is to dispose of our property in accordance with a common plan. The reciprocal and other gifts made herein are in fullfillment [sic] of this purpose and in consideration of each of us waiving the right, during our joint lives, to alter, to amend, or revoke this will in whole or in part, by codicil or otherwise, without notice to the other and without consent of the other, or under any circumstances after the death of the first of us to die.

* * *

ARTICLE TWO

Regardless of the order of our deaths, we give and bequeath all of the U. S. Bonds of Dalema Cattani, presently registered jointly with her sister, Mary Magnani Marchesi, and her cedar chest and its contents and all of her china to her sister, Mary Magnani Marchesi, or if she should be deceased, to her issue per stripes [sic] and not per capita.

## ARTICLE THREE

Regardless of the order of our deaths, we mutually give, devise, and bequeath all of the rest, residue and remainder of our separate estates wherever located to the two daughters of Virgil [sic] Cattani, Alba M. Kinkin and Minnie A. Johnson, and to the grandson of Virgil [sic] Cattani, Raymond Allen Johnson, as Trustees, all upon the following trusts and uses:

a) In the event that Virgil [sic] Cattani shall depart this life first, our trustees shall pay to Dalema Cattani, such sums out of the income and principal as shall be necessary to provide support for her, taking into consideration the manner of her living during the lifetime of both of us and we also direct the trustees to provide her a place of residence in the home in which she presently resides, so long as she shall desire, and we further direct that the trustees shall provide for all medical care which she may require and shall also provide for all nursing home care should such be required."

The will contained a companion provision providing for Virgilio in the event Dalema predeceased him. The will named the plaintiffs as the co-executors of the will and co-trustees of the resulting testamentary trust.

Virgilio died on November 18, 1978. The will was probated and the plaintiffs acting as co-executors inventoried the then existing assets of the estate. The assets were collected and transferred to the testamentary trust. The record shows the estate was found to have been fully administered and an order of discharge was entered. Dalema continued living in the home provided by Virgilio. The record shows funds from the trust were utilized for the physical maintenance of this residence. However, Dalema never received any funds in the form of cash from the trust during her remaining lifetime.

Following Virgilio's death, Dalema received social security benefits, a miner's pension and a "Black Lung" pension. As a former school teacher, she also received a teacher's pension. Also, subsequent to Virgilio's death, Dalema was injured in an auto collision. As a result, she secured approximately $20,000 in a personal injury settlement.

The record shows the funds from these various sources were deposited by Dalema in the Granville National Bank and the First National Bank in Amboy, Illinois. The evidence at trial showed numerous certificates of deposit (CDs) and a savings account. No specific origin for most of these deposits was shown. By the time of her death on February 19, 1986, the ownership interest in the savings account and

most, if not all, of the CDs had been transferred, established or placed in joint tenancy with Dalema's sister, the defendant, Mary Marchesi.

The United States bonds mentioned in article two of the will were redeemed prior to Dalema's death. There are vague references throughout the record to money kept in the cedar chest during Dalema's lifetime. How much money was kept there, if any, and when this alluded-to fund was removed from the chest was never shown. The chest remained in the Cattani home for some time after Dalema's death and was apparently in the office of the plaintiffs' attorney at the time of the trial.

Upon Dalema's death, the plaintiffs, as co-executors of Dalema's estate, filed an inventory of the estate in which they included the bank deposits of Dalema held in joint tenancy with the defendant. When the funds were not turned over, the plaintiffs instituted the instant action against the defendant.

Subsequently, the plaintiffs filed a motion for summary judgment as to liability on counts I and II of their amended complaint. The plaintiffs maintained that under the will Dalema made a contract to dispose of her property in accordance with the terms of the will. The defendant filed a cross-motion for summary judgment and a motion to strike affidavits filed in connection with the plaintiffs' motion for summary judgment.

On February 27, 1990, the trial court granted partial summary judgment for the plaintiffs on counts I and II of their amended complaint. The court found the document was a joint and mutual will and that the signatories were contractually bound. The court granted the plaintiffs summary judgment as to the portion of the CDs that were funded by any and all pensions and social security, including the teacher's pension. Plaintiffs were also entitled to all CDs funded by the personal injury settlement. The court found the defendant had the right to all CDs and accounts owned jointly by Dalema and the defendant at the time of the execution of the will, and/or funds derived therefrom, and any money in the cedar chest at the time of Dalema's death. The court granted the defendant summary judgment on the remaining counts of the plaintiffs' amended complaint.

An appeal by the defendant was dismissed by this court because no final and appealable order was entered by the trial court. (*Kinkin v. Marchesi* (1991), 213 Ill. App. 3d 176, 571 N.E.2d 501.) The cause proceeded to a bench trial at which plaintiffs presented the testimony of Philip Carlson, an officer of the Granville National Bank. He identified numerous exhibits evidencing the various accounts and records,

including interest checks. Raymond Johnson testified that following Dalema's death the interest checks received at a post office box in Mark, Illinois, were turned over to his attorney. The checks were not cashed or placed in an interest-bearing account.

The trial court found the plaintiffs were entitled to all accounts at the Granville National Bank together with all interest and earnings. The court ordered the plaintiffs to turn the cedar chest over to the defendant. The court found the contents of the chest to be linens and apparel. The court made no finding as to the accounts at the First National Bank. The defendant appeals and the plaintiffs have filed a cross-appeal.

The defendant contends the trial court erred in finding the Cattanis executed a joint and mutual will. She asserts the will fails to meet the criteria for a joint and mutual will as set forth in *Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 445 N.E.2d 77.

■ A joint and mutual will is a single testamentary instrument which contains the wills of two or more persons, executed jointly, and disposes of property owned in severalty, in common, or jointly by the testators. (*King v. Travis* (1988), 170 Ill. App. 3d 1036, 524 N.E.2d 974.) A joint and mutual will must be executed pursuant to a contract between the testators, requiring the survivor of them to dispose of the property as the will's provisions instruct. (*Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 445 N.E.2d 77.) The will itself may comprise the contract. (*Helms v. Darmstatter* (1966), 34 Ill. 2d 295, 215 N.E.2d 245.) Upon the death of one of the testators, the will becomes irrevocable, the survivor is estopped from disposing of the property in a manner other than under the terms of the will, and third-party beneficiaries may enforce the contract. (*In re Estate of Signore* (1986), 149 Ill. App. 3d 904, 501 N.E.2d 282.) The party arguing that the will is joint and mutual has the burden of establishing this point and it must be done by clear and convincing evidence. (*In re Estate of Mueller* (1975), 26 Ill. App. 3d 163, 324 N.E.2d 674.) On the other hand, where a single instrument is merely made the will of two or more individuals and is jointly executed by them, none of the attendant burdens or restrictions of a joint and mutual will apply. *King v. Travis* (1988), 170 Ill. App. 3d 1036, 524 N.E.2d 974.

In determining whether the document is a joint and mutual will, Illinois courts consider the following five characteristics: (1) the label the testators have assigned to the will—whether they refer to it as a joint and mutual will; (2) reciprocal provisions in the will—whether the testators made a disposition of the entire estate in favor of the surviving spouse; (3) whether there is a pooling of the testators' interests—

whether owned jointly, in common, or severally—into one joint fund; (4) whether there is a common dispositive scheme under which the parties dispose of the common fund by bequeathing it to their heirs in approximately equal shares; and (5) whether the testators use common plural terms such as a "we" and "our." See *Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 445 N.E.2d 77; *Perino v. Eldert* (1992), 229 Ill. App. 3d 602, 593 N.E.2d 151.

■ The will in the instant case was titled the "Last Will and Testament of VIRGILIO CATTANI AND DALEMA CATTANI." In the body of the document the Cattanis state the instrument is "jointly as well as severally" their last will and testament. Recently, this court in addressing the same issue presented here found the word "severally" to indicate completely the opposite of the word "mutually." (See *Perino v. Eldert* (1992), 229 Ill. App. 3d 602, 593 N.E.2d 151; Black's Law Dictionary 1232 (5th ed. 1979).) Thus the will fails to satisfy the first *Rauch* characteristic.

We recognize that some courts have found the label, standing alone, was not necessarily dispositive in determining whether a will was joint and mutual. (See *In re Estate of Kaplan* (1991), 219 Ill. App. 3d 448, 579 N.E.2d 963.) However, we also find the will fails to meet at least two other *Rauch* characteristics.

■ First, the will did not provide for a common dispositive scheme under which the testators disposed of the "common fund" by bequeathing it to their heirs in approximately equal shares. Under the will, except for the bonds and cedar chest, the entire estate passed to Virgilio's heirs alone.

Second, the will set up a trust at the time of the death of the first spouse. There was no provision for property acquired in the interim between the death of Virgilio and the death of Dalema. We note there was no attempt by the co-trustees, during Dalema's life, to claim the after-acquired property was a part of the *res* of the trust. In fact, the co-trustees stated they had no interest in what Dalema did with the money she received from social security and the pensions.

In sum, we find the instant document was not a joint and mutual will. Therefore, Dalema was free to use and dispose of the funds in any manner she wished, including placing the money in joint accounts and CDs with the defendant. The defendant possessed survivorship rights in the jointly held accounts and CDs (Ill. Rev. Stat. 1991, ch. 76, par. 2(a)) which were not voidable under the will. Those accounts and CDs passed directly to the defendant's sole ownership upon Dalema's death.

Given our finding that the will was not joint and mutual, we need not address the evidentiary issue raised by the plaintiffs' cross-appeal.

For the forgoing reasons, the judgment of the circuit court of Putnam County is reversed.

Reversed.

McCUSKEY and GORMAN, JJ., concur.