*In re* ESTATE OF MAYME R. MAYFIELD, Deceased (Charles William Mayfield *et al.*, Petitioners-Appellants, v. Estate of Mayme R. Mayfield, Deceased, *et al.*, Respondents-Appellees).

Fourth District   No. 4—96—0685

Argued April 16, 1997.—Opinion filed June 2, 1997.

GREEN, J., dissenting.

Timothy D. Sturm (argued), of Sturm & Germeraad, and Robert A. Stuart, Jr. (argued) and Randal J. Kaltenmark, both of Brown, Hay & Stephens, both of Springfield, for appellants.

Charles H. Delano III and David A. Stjern (argued), both of Delano Law Offices, P.C., and Jean M. Smith, both of Springfield, for appellees.

JUSTICE COOK delivered the opinion of the court:

The question in this case is whether petitioners, the children of Charles W. Mayfield, are bound by Charles' agreement not to contest his mother's will. Charles entered into that agreement in 1963, during the administration of his father's estate. Petitioners argue (1) Charles had no power to bind them by the agreement, and (2) by its terms, the agreement did not prevent them from contesting the will. The trial court held petitioners were bound. We affirm.

## I. FACTS

The affidavits of the parties disclose the following.

Cecil B. Mayfield and his wife, Mayme R. Mayfield, owned a 1,000-acre farm in Sangamon County, referred to as the Riverdale Farm. By deeds dated December 22, 1949, and June 26, 1950, the Mayfields conveyed an undivided one-half interest in the Riverdale Farm to Charles. On December 9, 1958, the Mayfields executed a "Joint and Mutual Last Will and Testament," in which they devised the remaining undivided one-half interest to the survivor of them, and on the death of the survivor, to their daughter, Jean Mayfield Smith. The will gave Charles an option to purchase Jean's interest at a price to be agreed upon by three appraisers, and if he predeceased the survivor, Charles' children were to have those rights. At the time he executed the will, Cecil was making preparations to travel to the Mayo Clinic for cancer surgery. The will was prepared by Jean, who was an attorney.

Cecil died December 20, 1958. On Charles' petition the will was admitted to probate in Sangamon County on January 28, 1959, estate No. 26727. Charles and Jean were appointed co-executors. Disputes, however, soon arose.

On November 18, 1963, Mayme, Jean, and Charles entered into an agreement whereby Mayme and Jean released Charles from any and all claims they had against him, and Charles released Mayme and Jean from any and all claims he had against them. The agreement stated that it "shall extend to and be binding upon the heirs *** of the parties hereto." The agreement contained a number of exceptions, areas as to which there was no agreement: (1) the accounting for the 1963 crop year, (2) matters regarding "sealed corn" grown in the 1962 crop year, and (3) "[a]ll rights of any of the parties hereto, and any other person or persons now or hereafter born, under or by virtue of the Joint and Mutual Last Will and Testament of Cecil B. Mayfield and Mayme R. Mayfield, dated December 9, 1958." The agreement affirmatively provided that Charles would resign as coexecutor in Cecil's estate and that he renounced any right to act as executor in Mayme's estate.

By a supplemental agreement that same date, the parties further agreed: "Neither said Charles W. Mayfield nor said Jean M. Smith will contest the Joint and Mutual Last Will and Testament of Cecil B. Mayfield and Mayme R. Mayfield, dated December 9, 1958, as the last will of said Mayme R. Mayfield." The supplemental agreement also provided: "Nothing in this supplemental agreement shall affect, restrict, or impair the generality of the terms and conditions of said settlement agreement of even date herewith."

The agreement and supplemental agreement were filed with the court in Cecil's estate on January 17, 1964, and were recited in the final account of the executor and petition for discharge filed that same day. An order approving the final account was entered September 10, 1964. As a result of the agreement and supplemental agreement, claims against Charles in Cecil's estate were dismissed, a lawsuit filed by Mayme against Charles was dismissed, and a lawsuit filed by Jean against Charles was dismissed.

Charles died November 5, 1967, leaving four children, the petitioners herein. Mayme died June 18, 1995, and her will (the joint and mutual will of December 9, 1958) was admitted to probate June 27, 1995. Petitioners demanded formal proof of the will, and a second order finding that the elements of the will had been proved was entered November 29, 1995. On December 27, 1995, petitioners filed a "Complaint to Set Aside Will and for Tortious Interference with Inheritance Rights," alleging that Jean occupied a confidential and fiduciary relationship with regard to Mayme and that Mayme had been unduly influenced by Jean. On February 23, 1996, Jean filed a motion to dismiss. A supplemental motion asserted that petitioners claimed benefits under the will when their attorney, on October 16, 1979, advised Jean that a partition suit could not be filed because petitioners had an option to purchase under Mayme's will.

On May 1, 1996, the circuit court entered an order dismissing petitioners' complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)). The court found that the agreement and supplemental agreement by their terms barred a contest of Mayme's will and that petitioners as Charles' heirs were bound by that agreement. The court noted that Charles knew the contents of the will during the administration of Cecil's estate, and "if he believed he had been deprived of an expectancy thereby, the time to raise that allegation was then, not now."

## II. THE PROBATE PROCEEDINGS IN 1959

■ Upon the death of one of the testators, a joint and mutual will becomes irrevocable. *Kinkin v. Marchesi*, 237 Ill. App. 3d 539, 543,

604 N.E.2d 957, 960-61 (1992); *In re Estate of Maher*, 237 Ill. App. 3d 1013, 1019-20, 606 N.E.2d 46, 51-52 (1992) (mutual wills). If the survivor executes a new will, the joint and mutual will may be enforced by seeking specific performance against the executor. *Helms v. Darmstatter*, 34 Ill. 2d 295, 300-01, 215 N.E.2d 245, 248-49 (1966); see also *Freese v. Freese*, 49 Ill. App. 3d 1041, 364 N.E.2d 983 (1977). The irrevocability aspect of joint and mutual wills is controversial, because wills are generally considered ambulatory until the death of the testator. In this case, however, it is immaterial whether the will of December 9, 1958, was irrevocable. Mayme did not attempt to revoke it, and the only question is whether it is, in fact, her will.

■ A joint and mutual will must be probated twice, on the death of the first to die and again on the death of the survivor. The admission of a will to probate is not *res judicata* on issues raised in a will contest. *In re Estate of Lynch*, 103 Ill. App. 3d 506, 509, 431 N.E.2d 734, 737 (1982). An action to admit a will to probate cannot be expanded to constitute a will contest. *In re Estate of Marcucci*, 54 Ill. 2d 266, 270, 296 N.E.2d 849, 851 (1973). Nevertheless, if no direct proceeding to contest the will is brought within the statutory period, the validity of the will is established for all purposes. *Robinson v. First State Bank*, 104 Ill. App. 3d 758, 761-62, 433 N.E.2d 285, 288 (1982), *rev'd in part on other grounds*, 97 Ill. 2d 174, 454 N.E.2d 288 (1983). "[A]ll that was decided or could have been decided" in the probate of Cecil's will is now terminated and closed. *Altemeier v. Harris*, 403 Ill. 345, 354, 86 N.E.2d 229, 235 (1949).

■ Charles was accordingly bound by the findings in Cecil's estate: that Cecil executed the will in the presence of the witnesses, that Cecil was of sound mind and memory, and that Jean did not exercise any undue influence over Cecil. Petitioners were also bound as to those issues regarding Cecil. Although petitioners were not parties to the probate of Cecil's estate, and in fact some petitioners were not then in existence, all necessary parties required by the statute were joined, and the decision is valid against all the world. That does not resolve this case, however. As the trial court held in its November 29, 1995, order regarding *res judicata*, the will was admitted to probate in 1959 only as to Cecil. It is still possible to argue that Mayme did not sign the will, or that Jean exercised undue influence over her, although one would have expected Mayme to have made that known during the 35 years before her death and after the will was first admitted to probate.

### III. POWER TO BIND FUTURE BENEFICIARIES

■■ It is common for orders to be entered in probate proceedings

that bind minors, contingent beneficiaries, and persons not in existence. Section 6—12 of the Probate Act of 1975 (Act) provides that a guardian *ad litem* need not be appointed where the interests of the ward are adequately represented by "another party having a substantially identical interest in the proceedings." 755 ILCS 5/6—12 (West 1994). The doctrine of virtual representation is most useful in cases involving unborn heirs, unknown parties, minors and the insane. *Krunfus v. Winkelhake*, 44 Ill. App. 2d 124, 127, 194 N.E.2d 24, 26 (1963).

> " 'Where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him. It must appear that he stands in the same situation as parties before the court and that he has a common right or interest with them, the operation and protection of which will be for the common benefit of all and cannot be to the injury of any.' " *Ludwig v. Sommer*, 53 Ill. App. 2d 72, 76, 202 N.E.2d 337, 338-39 (1964), quoting *Weberpals v. Jenny*, 300 Ill. 145, 155, 133 N.E. 62, 65 (1921).

The court refused to apply the doctrine of virtual representation in *Ludwig*, as there was a conflict of interest. (The two surviving children argued that the descendants of the two deceased children did not take.) See also Uniform Probate Code, 8 U.L.A. § 1—403(2)(ii), at 50 (1983) ("If there is no conflict of interest and no conservator or guardian has been appointed, a parent may represent his minor child").

Unlike the situation in *Ludwig*, there is no conflict in this case between Charles and his children. So long as he survived, Charles took to the exclusion of his children. No situation was possible where Charles might seek to profit at their expense. Nor is this a case where Charles and the children had separate interests; for example, where Charles was given one farm and the children were given another. When Charles was involved in the dispute in 1963, he was involved as one who owned an undivided one-half interest in the Riverdale Farm and would have the right under Mayme's will to purchase the remaining undivided one-half interest. In the current dispute petitioners have succeeded to Charles' undivided one-half interest in the Riverdale Farm and, under Mayme's will, would hold his right to purchase the remaining undivided one-half interest. Petitioners took their present interest in the Riverdale Farm through Charles, although they did not take that interest under Mayme's will.

■ It is desirable, in the area of estates and trusts, that present-day disputes be resolved without waiting many years for interests to

vest. There is a concern, however: present beneficiaries should not be allowed to advance their own interests over those of future beneficiaries, particularly when that would be contrary to the intent of the testator or settlor of the trust. That concern is often mentioned when the income beneficiaries of a spendthrift trust by agreement attempt to terminate the trust or to obtain a fee interest in themselves. The problem is now addressed by section 16.1(a) of the Trusts and Trustees Act (Trustees Act), which provides that any agreement between the trustee and all primary beneficiaries (those currently entitled to receive trust income or principal)

> "shall be final and binding on the trustee and all beneficiaries of the trust, both current and future, as if ordered by a court with competent jurisdiction over all parties in interest, if all other persons who have a contingent, future, or other interest in the trust would become primary beneficiaries only by reason of surviving a primary beneficiary." 760 ILCS 5/16.1(a) (West 1994).

Section 16.1 of the Trustees Act does not require any court approval. 760 ILCS 5/16.1 (West 1994). It does not apply, however, to any agreement that accelerates the termination of a trust, in whole or in part.

■ "[T]he rule is well established that courts of equity favor the settlement of disputes among members of a family by agreement rather than by resort to law." *Altemeier*, 403 Ill. at 350, 86 N.E.2d at 233. *Altemeier*, however, refused to approve a family settlement agreement, entered in connection with a will construction contest, which would have abrogated a spendthrift trust and resulted in the great-grandchildren and other remote descendants receiving nothing. It was said, before the enactment of section 16.1 of the Trustees Act, that where there are interests that are not yet vested a trust may not be terminated by agreement of the beneficiaries. *In re Estate of Morgan*, 74 Ill. App. 3d 853, 859-60, 393 N.E.2d 692, 697 (1979). In *Morgan*, however, there were conflicting positions, and a guardian *ad litem* appointed to represent the interests of the contingent beneficiaries opposed the attempt to disclaim. There was no disclaimer or termination of trust in the present case. A family settlement agreement will not be approved for the sole purpose of securing greater individual financial advantages than those specified in the will and intended by the testator. *In re Estate of McCabe*, 95 Ill. App. 3d 1081, 1084, 420 N.E.2d 1024, 1026 (1981). Again, that is not this case.

■ In many ways, this case seems to fall through the cracks. It involves an agreement, not a judgment which would be given *res judicata* effect, although the agreement was included in a court order (the order approving the final report in Cecil's estate). This case does not involve a trust, although it involves something like a trust,

interests created by a will probated in 1959 that could not be revoked after that time by the remaining testator. There is a question whether section 6—12 of the Act or the doctrine of family settlement agreements applies directly to this case. Nevertheless, the applicable policies are clear. Where a parent and children have a common right or interest, where there is no conflict between the parent and any child, where the parent effectively protects the rights of the children, the parties should be able to make a full and lasting settlement of their dispute. The alternative, an additional 35 years of family strife, cannot be considered to be in anyone's best interests.

We conclude, on the facts of this case, that Charles had the power to bind his children as well as himself not to contest Mayme's will.

## IV. TERMS OF THE AGREEMENT

■ When the parties executed the original agreement of November 18, 1963, they intended that their heirs, devisees, legatees, executors, and administrators would be bound to the same extent they were bound. They included a paragraph in the agreement that expressly said so. No similar paragraph was included in the supplemental agreement, but heirs and others were clearly bound by that agreement as well. Where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract. *In re Estate of Croake*, 218 Ill. App. 3d 124, 126, 578 N.E.2d 567, 568 (1991).

The original agreement reserved "all rights of any of the parties hereto" under or by virtue of the will. It also reserved all rights of "any other person or persons now or hereafter born" under or by virtue of the will. The second reservation probably was not necessary, because, as discussed above, heirs and others were already bound to the extent the parties to the agreement were bound. The original agreement, in all respects, treated the parties and their heirs in the same manner.

Assuming that the right to contest a will is a right "under or by virtue of the [will]," the supplemental agreement made a change to the original agreement. The supplemental agreement provided in paragraph 1 that neither Charles nor Jean would contest the will as the last will of Mayme. Again, heirs and others would appear to be bound by that provision, as they are bound by every other provision in the agreement and supplemental agreement. Petitioners argue, however, that because the original agreement specifically referred to other persons, and paragraph 1 of the supplemental agreement did

not, an intent was shown to reserve to Charles' heirs the right to contest the will on the death of Mayme. In support, petitioners cite the closing paragraph of the supplemental agreement, that "[n]othing in this supplemental agreement shall affect, restrict, or impair the generality of the terms and conditions of said [original] agreement." Petitioners suggest that only the parties specifically mentioned in the supplemental agreement, Charles and Jean, gave up their right to contest Mayme's will.

We reject that argument. Apart from paragraph 1, all through the agreement and the supplemental agreement Charles and his heirs are treated the same. By the express terms of the agreement, heirs and others are bound to the same extent the parties are bound. If there was an intent, in adopting paragraph 1, to treat Charles and his heirs differently for the first time, surely the parties would have expressly stated that heirs were not bound, and not left that intent to be implied from the failure to mention heirs in paragraph 1. No reason has been suggested why an agreement intended to settle all claims between the parties (or almost all claims) would have reserved the right to Charles' heirs to assert those claims. At the time the agreements were entered into, it was unlikely the heirs would ever have had the right to bring a will contest; it appeared that right would belong exclusively to Charles.

Accordingly, we conclude that the terms of the agreement and supplemental agreement bound petitioners, as well as Charles, not to contest Mayme's will.

## V. CONCLUSION

An appeal from a section 2—619 dismissal is the same in nature as one following a grant of summary judgment and is likewise a matter given to *de novo* review. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993). We conclude that petitioners are bound by their father's agreement not to contest Mayme's will. We need not consider respondents' alternative arguments that Charles or petitioners are bound by their electing to accept benefits under the will or that there has been an equitable estoppel.

Affirmed.

KNECHT, J., concurs.

JUSTICE GREEN, dissenting:
The theory of the majority is innovative and may well produce

fairness in this particular case, but it is not supported by common law or statutory precedent and could cause injustice in many instances.

The problem is that the common law rule of virtual representation applies to litigation and resulting judgments and not to agreements to settle disputes. One person can give virtual representation to another in a lawsuit when they have a common interest in reaching the same result. This does not happen when a person who would represent another settles for a consideration given to the one who settles purportedly for both of them. Here, if Charles and his children were at odds, allowing Charles to settle for consideration to him and promise, on behalf of his children, that the children would not contest the will would be grossly unfair. Likely, here, the consideration that Charles received from his promise enhanced his estate, and Charles' children will eventually indirectly benefit from it. However, that would not always happen.

Section 16.1 of the Trustees Act gives some authority for including the right of one person to settle the rights of another under special circumstances and does apply the rule of virtual representation to the situation there. However, section 16.1 concerns trusts and their beneficiaries and has no direct application to the instant situation. If the common law doctrine of virtual representation is as expansive as the majority makes it, no reason would exist to have a section 16.1.